UNITED STATES of America,

v.

John MACHIBRODA.

Cr. Nos. 10345, 10348.

United States District Court
N. D. Ohio, W. D.

Sept. 30, 1959.

Russell C. Ake, U. S. Atty., Cleveland, Ohio, Richard M. Colasurd, Asst. U. S. Atty., Toledo, Ohio, for plaintiff.

KLOEB, Chief Judge.

These matters come before the Court on a Motion of the defendant to Vacate Sentences, under the provisions of Section 2255, Title 28 U.S.C.A., on the Memorandum in Opposition to the Motion, with exhibits attached, and the defendant's Memorandum in Reply thereto, and on the files and records of these cases. The files and records, including transcripts of defendant's several appearances before this Court, indicate the following:

On January 25, 1956 the defendant, represented by counsel, appeared before Hon. T. L. McCombs, Judge of the County of Wentworth, City of Hamilton, Canada; waived his rights to the extradition act and consented to return to

Toledo, Ohio, as a prisoner to answer to bank robbery charges forming the basis of his later appearance and sentencing before this Court.

The transcript of proceedings of February 17, 1956 indicates that the defendant appeared before this Court and was represented at that time by John J. Schuchmann, Esquire, and Dan H. McCullough, Esquire, counsel of his own choice. Clarence M. Condon, former Assistant United States Attorney, proposed to file an Information of two counts charging the defendant and one Marvin Ferris Breaton with the robbery of the Waterville State Savings Bank, Waterville, Ohio, and the jeopardizing of the lives of the employees of said Bank by the use of dangerous weapons, in violation of 18 U.S.C.A. § 2113(a) and (d). This is Criminal No. 10345. The Information was read word for word although it was indicated that copies of this proposed Information had been previously forwarded to the defendant. After explaining to the defendant his rights with regard to having this case presented to the Grand Jury, counsel for the defendant stated that the defendant would sign the Waiver of Grand Jury. Defendant also stated that he desired to sign the Waiver of Grand Jury. It was also indicated that counsel for the defendant had examined the charges carefully and that they had discussed with the defendant the charges of the Information. Accordingly, the Information as to Criminal No. 10345 was filed.

Counsel for the defendant stated that they were aware that another charge of bank robbery was being considered against the defendant and requested that a plea as to Criminal No. 10345 be deferred at that time.

Transcript of proceedings dated February 24, 1956 indicate that the defendant again appeared before this Court accompanied by his counsel, John J. Schuchmann, Esquire. An additional Information was proposed to be filed against the defendant of two counts, and charging the defendant with the robbery of the First National Bank of Forest, Forest, Ohio, and the jeopardizing of the lives of the employees of said Bank, in violation of 18 U.S.C.A. § 2113(a) and (d). This is Criminal No. 10348. Again, the two count Information was carefully read to the defendant and again his rights with regard to having the case presented to the Grand Jury was fully explained to him and again with his counsel defendant indicated his desire to waive the Grand Jury. Accordingly, the Information as to Criminal No. 10348 was filed. At this time counsel for the defendant and the defendant himself expressed their desire to enter a plea of guilty by the defendant to the Informations filed, Criminal No. 10345 and Criminal No. 10348. After the acceptance of said pleas of guilty this Court then referred the matters to the Probation Officers for a presentence report.

The trial of the case of United States v. Marvin Ferris Breaton, the co-defendant in Criminal No. 10345, was tried to a jury from May 1, 1956 to May 3, 1956. The defendant testified in behalf of Mr. Breaton which, to the best of this Court's recollection, was that the defendant had admitted the robbery of the Waterville Bank, but that the defendant was accompanied by another individual and not by the co-defendant Breaton. Obviously, the Jury did not accept the defendant's account of the bank robbery and returned a verdict of Guilty against Breaton on both counts.

On May 23, 1956 a transcript of proceedings reveal that the defendant appeared before this Court for sentencing. This Court inquired of counsel for the defendant as to whether or not he had anything to say in this matter, to which Mr. Schuchmann replied that he did not. Thereupon, the charges to which the defendant had entered a plea of guilty were reviewed and a sentence of twenty-five years imposed in Criminal No. 10345, and a sentence of fifteen years imposed in Criminal No. 10348, said sentences to be served consecutively.

The allegations raised by the defendant in his Motion to Vacate appear

to be four in number. The first two will be reviewed at this time. Defendant contends that his pleas of guilty were entered after receiving a promise from former Assistant United States Attorney Clarence M. Condon that the defendant would receive a sentence of no more than twenty years. Defendant secondly alleges that he was restrained from bringing this so-called agreement to the attention of his attorneys because of coercion by the former Assistant United States Attorney that if he, the defendant, did reveal this understanding between themselves, certain other unsettled bank robberies would be added to defendant's problem. Defendant also alleges that after receiving the sentence of forty years the former Assistant United States Attorney promised to file a Motion for Reduction of Sentence within sixty days. Under oath, Clarence M. Condon, former Assistant United States Attorney, emphatically denies these allegations. In conjunction with these allegations the defendant states that he wrote two letters to this Court informing it of the above-mentioned promises. This Court did not receive two letters from the defendant. It did receive one letter, which is very revealing and which will be referred to later.

These charges of an agreement between a former Assistant United States Attorney and the defendant are serious. If this Court had any doubt as to their falsity it would require a hearing, but the following inference to be drawn, together with the letter which this Court received from the defendant under date of November 30, 1956, conclusively indicates the falsity of the defendant's allegations.

Freedom is one of the greatest joys and assets of every human. If it be true that former Assistant United States Attorney Clarence M. Condon had made these promises and had promised to move for reduction of defendant's sentence from forty years to twenty years within sixty days after sentence was imposed, the failure of the Federal Attorney to so move for reduction of sentence would have brought forth a cry of anger and anguish from the defendant. But the defendant remained silent from the date of sentence on May 23, 1956 to the time of filing of his Motion to Vacate Sentence on February 9, 1959, a time interval of shortly less than three years. Apparently, it took the defendant three years to concoct these charges. In addition, the evidence which conclusively leads this Court to consider the allegations of defendant to be false is a letter which the defendant addressed to this Court, dated November 30, 1956, more than six months after imposition of sentence. A copy of this letter is attached to this Memorandum and reads as follows:

"Your Honor:

"On May 23rd, 1956, I stood before your court and was sentenced by you, to a term of forty years imprisonment for bank robbery. (Case number—10345 and 10348.) You having been associated for so long a time with a part of our emotional world, are faced with a great task of dealing with human lives and the handing down of extremely important decisions. I am unbiased by the decision you arrived at but, if I may be so bold, the purpose of a prison sentence is two-fold.

"1. Is a correction measure in the hope that, with a reasonable sentence, the accused will straighten up and become an accepted—even useful—citizen.

"2. To put the accused away for good because there seems no chance that he could ever be a law-abiding person.

"My feeling is that you chose the latter because you could see no alternative. Because of my obduracy and foolish pride all you could see was a young maniac with no apparent respect for authority and so you thought I was immutable. We are all split personalities—varying in degree and I was judged wholly on the side I turned to you. I am hardly in a position to glorify myself or to be showered by laudable praises,

however, I have a humility and belief in a supreme power, a love and longing for a home with children (to my mind the most important of social instincts); A great desire to again be accepted by our society whom I flouted and am truly sorry for doing so. Undoubtedly my knowledge of law is very naim but I believe that our law to-day represents, not only authority, but justice, in the true sense of the word. We have progressed a long way since the days when a man could be hung for stealing a loaf of bread. You being a Federal Judge and a man of intelligence, integrity and humility, and it is my belief that you will give a man a break if he is deserving of it. Needless to say, forty years is a lifetime in itself, and should a man serve out such a sentence he would be in a complete state of stupefaction, of little worth held. I urge you to reconsider my case in the hope that you would consider making my two sentences concurrent. Presently, my life seems to be literally terminated. Since my incarceration I have felt the worst of fortunes might, feeling the torments of Hell itself. I am being very veracious when I say my goal is to live again amongst society as a respectable citizen. I no longer look on life as something flippant and look to you for a chance, so that I may prove myself. A complete retrospect of my life would reveal to you, that I have the possibilities of living with my fellow man as a human being. If my thoughts could but be read, so I could fully convince you of my sincerity, I shall await your acknowledgement of my letter with great anxiety and trusting you shall give my case some consideration.

"Very respectfully yours,
"(signed) John Machibroda
73409"

In reply thereto this Court, through the United States Probation Officer, directed a letter to the defendant which reads as follows, and a copy of which is attached hereto:

"December 20, 1956

"Mr. John Machibroda, No. 73409
"Box 1200
"Leavenworth, Kansas

"Dear Mr. Machibroda:

"Your letter of November 30 to Judge Frank L. Kloeb has been referred to us for a reply.

"The Judge requested us to inform you that he has no further jurisdiction in your case, and that your case is now strictly in the hands of the Federal Parole Board. Therefore, Judge Kloeb is unable to take any further action in your case.

"As you, undoubtedly, know, you will be eligible for parole consideration when you have served one-third of your present sentence. The granting or denying of parole is strictly a prerogative of the Federal Parole Board. Therefore, we cannot speak for them.

"Very truly yours,
"Jesse T. Sell
U. S. Probation Officer"

"JTS:bp

The letter of the defendant contains a plea to have his sentences adjusted downward to twenty-five years (not twenty years) because he claims a change in himself to the better to be able to live with his fellow-men. At no place in this letter does the defendant make any allegations with reference to an agreement made with the former Assistant United States Attorney prior to sentence. Apparently, this is a sincere letter from a man who has finally become aware of what his former transgressions to society have created for him. No other conclusion can be drawn but that defendant's allegations in his Motion to Vacate Sentence are mere afterthoughts—afterthoughts in an attempt to gain his freedom. As was succinctly stated in United States v. Lowe, 2 Cir., 1949, 173 F.2d 346, at page 347:

"We hold that a charge that a bargain had been made between the defendant's attorney and the Assistant United States Attorney—a charge that was never asserted at the time of the hearing before Judge Clancy nor apparently for over a year thereafter—which was neither verified nor supported in any way by the arguments submitted * * * was insufficient to require Judge Medina to grant the defendant's motion. We think the charge was evidently a mere afterthought. Had it any substance, the defendant would have protested at his sentence when it was imposed, and then and there have sought to withdraw his plea and to go on trial on the merits."

■ The third allegation of defendant is that this Court did not adhere to Rule 11 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., by not inquiring of the defendant at the time he entered his pleas of guilty as to whether or not they were voluntarily made by him, and whether or not he understood the nature of the charges. This allegation of the defendant is unfounded. The Court observes that the defendant was represented constantly by counsel of his own choice during all stages of the proceedings. The Court further observes that the counsel so selected by defendant are lawyers of repute, especially in matters of criminal law. Counsel informed this Court, as is set forth by the transcript of proceedings that they fully discussed the nature of the charges with defendant. At the time of entering pleas of guilty to the two Informations filed against the defendant, not only did defendant's attorney, Mr. Schuchmann, enter a plea of guilty in behalf of the defendant, but this Court inquired of the defendant whether or not it was his desire to enter pleas of guilty, to which the defendant answered in the affirmative. Furthermore, prior to his appearance in this Court, the defendant was represented by counsel in Hamilton, Canada, and waived extradition to the charges of bank robbery to which he was later charged in the Informations filed in this Court. There is no question but that the defendant voluntarily and with full understanding entered his pleas of guilty to the Informations filed in these cases.

■ The fourth and last allegation of defendant is that this Court did not afford him an opportunity to make a statement in his own behalf. On May 23, 1956, defendant's fourth appearance before this Court, inquiry was made of defendant's counsel as to whether or not he had anything further to say. Mr Schuchmann replied that he had nothing further to add. This Court then reviewed the charges to which defendant had entered pleas of guilty; sentences were imposed and the reasons for the sentences were discussed before the defendant. Under a similar situation our Sixth Circuit U. S. Court of Appeals in Sandroff v. United States, 174 F.2d 1014, affirmed the conviction of the defendant.

Accordingly, it is conclusively shown that defendant is entitled to no relief. Furthermore, he is not entitled to be returned to this Court for a hearing. As our Sixth Circuit U. S. Court of Appeals stated in Johnson v. United States, 239 F.2d 698, at page 699:

"We have reached the conclusion that appellant is not entitled to a personal hearing in the district court, for we cannot believe that the Supreme Court intended in its care for the protection of human liberty to impose upon the inferior courts the duty of recalling, years after action in criminal cases, prisoners for rehearings based on obviously nebulous and false accusations. In this case, we are convinced that an oral hearing, if granted to the petitioner, could not remotely redound to his benefit. The cost to the Government in transporting dangerous prisoners of the type of the present petitioner, Johnson, an escape expert and dangerous gunman, is in our judgment against sound public policy in the enforcement of justice in criminal cases, where the grounds

upon which the petition is based are so palpably incredible."

We are of the opinion that the files and records of these cases show conclusively that the petitioner is entitled to no relief and that his Motion to Vacate Sentences ought to be and is overruled.

An Order is drawn accordingly.