Richard Henry BRYAN, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee,

No. 72-2127.

United States Court of Appeals, Fifth Circuit.

April 4, 1974.

Charles C. Foster, Houston, Tex. (Court-appointed), for petitioner-appellant.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Oxford, Miss., for respondent-appellee.

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY, and GEE, Circuit Judges.

CLARK, Circuit Judge:

Richard Henry Bryan moved the district court for post conviction relief under 28 U.S.C. § 2255. That court denied his motion without a hearing. A panel of this court previously affirmed the denial as to all but one of the multitudi-

nous issues raised by Bryan, but held that he should have been accorded an evidentiary hearing on the question of whether his plea of guilty to a charge of escape was the product of an unkept plea bargain. 481 F.2d 272 (1973). This court ordered the cause to be reheard en banc and has limited its consideration to the plea bargain issue in Bryan's case and to future plea bargaining procedures in this circuit in general.

## I.

Bryan came into the custody of the United States on a charge of robbing a federally insured bank. He was eventually convicted, and this conviction was affirmed on appeal, 423 F.2d 127 (5th Cir. 1970). The government asserts that while awaiting trial he escaped from federal custody and was retaken. Slightly over one month prior to his bank robbery trial, Bryan was arraigned on the charge of escape. Represented by appointed counsel, he entered a plea of not guilty, and his trial on the escape charge was fixed for a date before the scheduled time for trial for the robbery. On the day set he appeared before the court with his counsel and announced that he wished to change his plea from not guilty to guilty. On that occasion the court addressed Charles D. Thomas, appointed counsel for Bryan, and the following exchange took place in open court in Bryan's presence.

"BY THE COURT: And do you know of any pressure that has been brought to bear upon him from any source to get him to change his plea?

"BY MR. THOMAS: I know of no such.

"BY THE COURT: Do you know of any promises that have been made?

"BY MR. THOMAS: None whatever.

"BY THE COURT: Has anybody indicated to him, or to your knowledge, that this plea of guilty would be accepted and would cause a lighter and lesser sentence to be made upon him than it would be if he stood trial and was convicted?

"BY MR. THOMAS: Not to my knowledge, directly or indirectly, Your Honor.

"BY THE COURT: Do you feel that his desire to plead guilty, change his plea from Not Guilty to Guilty is one which is freely and voluntarily and knowingly and understandingly made on his part?

"BY MR. THOMAS: I do, sir."

The court then addressed the Defendant Bryan, a high school graduate then twenty-five years of age, and the following colloquy is reflected by the record.

"BY THE COURT: Has anyone promised you anything in connection with this change of plea?

"BY THE DEFENDANT BRYAN: No sir.

"BY THE COURT: Has anyone threatened you in any manner?

"BY THE DEFENDANT BRYAN: No, sir.

"BY THE COURT: Has any agent of the government, or of any other governmental agency, state, or municipality, or anybody, done anything to you to make you want to change your plea in this case?

"BY THE DEFENDANT BRYAN: No, sir.

"BY THE COURT: Then why do you in fact want to change your plea?

"BY THE DEFENDANT BRYAN: Well, I feel I'm guilty of the charge.

"BY THE COURT: Did you, in fact, escape from the jail while you were being confined there?

"BY THE DEFENDANT BRYAN: Yes, sir.

\* \* \* \* \* \*

"BY THE COURT: Do you then knowingly and voluntarily waive your right to a trial by jury?

"BY THE DEFENDANT BRYAN: Yes, sir.

"BY THE COURT: And want to plead guilty to the charge?

"BY THE DEFENDANT BRYAN: Yes, sir.

"BY THE COURT: Then the Court finds from the information given to him by counsel for the defendant, and by defendant, that this defendant knowingly, and understandingly, freely and voluntarily, desires to withdraw his plea of not guilty in this case and to plead guilty to the charge in the indictment, and the Court finds that his plea is, in fact, freely, voluntarily, knowingly, and understandingly entered, and the Court will accept his plea of guilty to the charge, upon the government's giving a factual basis for the prosecution in this case . . . . "

Bryan and his co-defendant subsequently went to trial and were convicted on charges of armed robbery of a federally insured bank. Almost two months after this conviction Bryan again appeared before the court below with Counsel Thomas for sentencing on the escape and robbery convictions. Bryan was accorded and exercised his right of allocution before sentence, but asserted no reason why he should not be sentenced, or why he should be sentenced in any special manner, on his plea of guilty to the charge of escape. After the court pronounced sentences of 22 years for the bank robbery conviction, together with a two-year consecutive sentence for the escape, the record discloses no protest by Bryan or his counsel.

As the panel opinion discloses, Bryan's motion papers assert that, pursuant to the terms of his plea bargain, he and his lawyer both deliberately deceived the district court in their representations at

the time of Bryan's change of plea on the escape charge. Bryan's supporting affidavit declares that Counsel Thomas represented to him that a plea bargain had been concluded between Thomas, other defense attorneys, the United States Attorney and District Judge, which provided for Bryan to receive a concurrent sentence on the escape charge to any sentence which might be imposed if the jury found him guilty after the pending bank robbery trial. A further alleged condition of the bargain was for the conduct of an official charade in which the parties and the court would falsely develop a record of proceedings by ritualistically reciting that no agreement had produced the plea of guilty and that no promises or bargains of any kind underlaid it. Bryan also alleged that at the time of sentencing he immediately protested the failure of the bargain to his attorney and that his attorney then brought the agreement to the attention of the judge, who required his attorney's comment to be placed of record. He concludes with the assertions that "the judge then said something but I don't remember what he said," and that the portion of the record reflecting this exchange has been wrongfully deleted.

The panel reversed and remanded the summary denial of relief principally upon the basis of the Supreme Court's holdings in Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973), and Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 473 (1962) and as those cases applied the language of § 2255 [1] and the rationale of Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).[2] Its opinion reasoned that the files and records in Bryan's case could

1. In pertinent part this statute provides:
Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. 28 U.S.C. § 2255.

2. The panel also relied upon the following cases from this court of similar import:
United States v. Ewing, 480 F.2d 1141 (1973);
Johnson v. Beto, 466 F.2d 478 (1972);
James v. Smith, 455 F.2d 502 (1972).

not amount to a conclusive showing that he was entitled to no relief, because he alleged that his part of the plea bargain agreement required not only a confession of guilt but also that he join his attorney in falsely stating to a guileful judge that no bargain existed. The panel held that a hearing was required which was to be conducted by a judge other than the one impugned in petitioner's pleadings. We reverse that portion of the panel opinion and affirm the district court's dismissal in toto.

 No guilty plea which has been induced by an unkept plea bargain can be permitted to stand. At the outset of our discussion it is appropriate to redact the rule that *Santobello* and our own circuit jurisprudence have made crystal clear. Today's decision is intended to reinforce, not attenuate this principle. However this fundamental is not the fulcrum upon which the instant decision turns. Rather, our task is to apply judiciously the teachings of *Machibroda* and *Fontaine* to determine whether in the allegation versus record setting of Bryan's case his Section 2255 motion and the files and records of the prior plea and sentencing proceedings conclusively show that he is entitled to no relief. No per se rule can be applied, for in the final analysis, the issue becomes one of fact. Its resolution necessarily depends upon what is alleged and what is shown by the documentation of each case. Thus, we must look to the details of those causes which provide our guidance here.

David Fontaine's Section 2255 motion sought to vacate his plea of guilty, entered without benefit of counsel, on the ground that it had been coerced. His charges of physical abuse and illness from a recent gunshot wound that required hospitalization were documented by records tendered in support of his petition. These records also showed that a month following the plea he was again hospitalized for heroin addiction, for aggravation of the earlier gunshot wound and other severe illnesses. Fontaine further alleged that prolonged interrogation continued during the period preceding his plea. All of this, he claimed, coerced his confession, his waiver of counsel and the uncounselled plea of guilty.

The record against which the petition and its supporting documentation was set consisted of a written waiver of counsel, a grand jury indictment and a plea supplemented by a transcript of the standard plea taking proceedings mandated by Fed.R.Crim.P. 11, in which the petitioner acknowledged in substance that his plea was given voluntarily and knowingly, that he understood the nature of the charge and the consequences of the plea, and that he was in fact guilty. The *Fontaine* court required the district court to conduct a hearing on the petition and concluded its opinion as follows:

> On this record, we cannot conclude with the assurance required by the statutory standard "conclusively show" that under no circumstances could the petitioner establish facts warranting relief under § 2255
>
> . . . .

John Machibroda's guilty plea was taken before Rule 11 was amended to require a dialogue at sentencing between the court and the defendant personally. Machibroda was at all times represented by retained counsel. Contrary to Fed.R. Crim.P. 32(a) as it then existed, Machibroda was afforded no personal right of allocution at sentencing although his counsel was permitted to address the court in his behalf. Consecutive sentences of twenty-five and fifteen years were imposed. Almost two and one half years later Machibroda filed a Section 2255 motion which asserted that an Assistant United States Attorney, Condon, had visited him in jail at a time when his attorney was not present and offered him a bargain of a maximum sentence of twenty years on one count, and a ten year concurrent sentence on the second count in exchange for a plea of guilty. At the alleged plea bargain conference, Condon assertedly cautioned Machibroda not to disclose the bargain to his counsel. The motion further alleged that

after Machibroda so pled, but before he was sentenced, he appeared as a government witness in a proceeding against another defendant charged with one of the same robberies to which Machibroda pled. He further claimed that after his testimony, but still prior to sentencing, Condon again met with him alone to advise that the United States District Judge was "vexed" by the substance of his testimony and might impose longer sentences than originally bargained for. Machibroda averred that he expressed vigorous objection to Condon and stated that he would discuss the matter with his attorney and the judge, whereupon, Condon threatened to bring other bank robbery charges against Machibroda if he did not keep his peace. He further claimed that Condon assured him that the United States Attorney would move *for reduction of sentence within sixty days*—after the judge had "cooled off" —so that the original bargain would be kept. Finally, Machibroda alleged that he had twice written to the sentencing judge complaining about Condon's misrepresentation but had received no answer.

The government filed a sworn denial to everything asserted by Machibroda except that it admitted a jailhouse conference in which Condon told Machibroda that a willingness on his part to testify truthfully in the pending trial might invoke favorable sentence consideration. The court dismissed the motion without a hearing and noted that *six months after sentencing he had received one letter* from Machibroda which did not mention any unkept bargain, but merely requested that his sentences be made concurrent.

The *Machibroda* Court noted that the factual issues developed by the detailed petition and the responding affidavit related to purported conferences dehors the record and specifically pointed out

that they were not such as the judge could resolve by drawing on his own personal knowledge and recollection. The court further found that the record in Machibroda's plea taking and sentencing did not "conclusively show" he was entitled to no relief, therefore the dismissal was vacated and the cause remanded for a hearing with this closing comment:

> There will always be marginal cases, and this case is not far from the line. But the specific and detailed factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible . . . .

█ Unlike the allegations made in the petitions filed by Fontaine or Machibroda, Bryan's assertions sought to place the district judge improperly but squarely in the midst of the plea bargaining process both in the anteroom and in the courtroom. All of the material issues raised by Bryan are ones the judge, who was required by Section 2255 to hear the motion, could readily resolve by drawing on his own personal knowledge and recollection. It is sure that if he had done such an extraordinary thing as to participate in making a plea bargain with a defendant who was to appear before him, especially a bargain the judge had a part in suppressing and did not keep, the matter would be indelibly impressed on his memory.[3] Unlike Fontaine or Machibroda, Bryan did not assert that he was the subject of physical abuse or that any threats had been made against him to coerce his plea. His assertion was that a concurrent sentence had been conditionally offered in exchange for his willingness to plead guilty and that, when the condition—conviction on the robbery charge—came to pass, he did not receive the concurrent sentence he had bargained for. Unlike Fontaine or Machibroda, Bryan tendered only his own affidavit to counter a record com-

---

3. Bryan's allegations as to an altered record of the proceedings at sentencing are also pertinent here. It passes being credible that a judge would not know that a part of a record of proceedings before him in which he had required a lawyer to publicly state facts establishing judicial wrongdoing had been wrongfully deleted.

posed of the directly inconsistent former testimony by himself and his counsel and wholly inconsistent questions and comments from the trial judge.

Most importantly, the record of the plea proceedings in the case at bar reflects that both Bryan and his attorney testified without conflict or equivocation that no plea bargain had been made or promised, directly or indirectly. No such testimony appeared in the files and records developed in *Fontaine* or *Machibroda*. In neither of these cases had the petitioner and his attorney been required to testify in open court as to whether a bargain had been struck. In neither case did explicit denials of plea bargains appear as a part of a duly recorded court proceeding record. To the contrary, not only was the subject of plea bargaining entirely absent from Fontaine's record but also those documents disclosed that he did not even have an attorney. The *Machibroda* record shows that the only person permitted to speak at the time of his sentencing was the attorney from whom knowledge of the alleged bargain had assertedly been withheld.

It is one thing to hold that a petitioner facing files and records that are silent on the subject of plea bargaining is entitled to develop a charge that a police official or prosecutor bargained not only for his plea but for concealment of the bargain itself. It is a wholly different thing to say that a district judge must accord a hearing to a petition which advances, not the suppression of an unraised fact, but the utterly incredible assertion that all the former official proceedings in his cause were no more than a stultifying charade in which justice was mocked by every participant—even the judge himself. No proceeding, not a

single conceivable one, would enjoy the finality that decisional law must have to maintain its credence. Indeed, the number of hearings which a wilful affiant could provoke as to a single conviction would be limitless, for each time he could swear that someone at the last preceding hearing suborned false testimony from him or his lawyer or that the judge played false in the performance of his duties. Bryan had his day in court on the issue of whether a bargain had been connected with his plea. Both he and his counsel denied that a bargain was involved "directly or indirectly." Section 2255 itself proscribes successive motions for similar relief and in the spirit of that bar we hold that the record's positive "no bargain" affirmation precludes the necessity to retry the issue.[4]

The Supreme Court said *Machibroda* was "not far from the line." This case is way over it.

## II.

Although we hold that Bryan was not entitled to relitigate his in-court declaration that his plea was not the result of a bargain, the court's awareness of the increased incidence of attacks on guilty pleas based on breaches of those agreements compels us, in our supervisory capacity, to speak to the need for more adequate Rule 11 procedures so that district courts will routinely explore this area in testing the voluntariness of pleas tendered. Plea bargains have accompanied the whole history of this nation's criminal jurisprudence. For most of this journey they have been unseen, if not secreted, appendages. "Don't say I said so, but" seems to have been the usual introduction in times past. Why this area was kept in the shadows is ob-

---

4. We reject the contention that the record here is inconclusive because the court did not state to Bryan (1) that he could respond to the inquiry by stating the promises allegedly made without fear of incurring the court's disapproval, and (2) that it expected truthful answers to the questions asked. Under the assertions Bryan makes, the first statement would have been ineffective. Absent a desire to bring the strictures of perjury to bear (a notion hardly attributable to Bryan) it would be redundant, if not absurd, to hold that a judge must admonish an attorney and his client to be truthful in their responses to his questions before they could be accepted.

viously due more to tradition than reason. As long ago as 1967 this court pointed out that "[p]roperly safeguarded plea discussions and plea agreements between an accused and a prosecutor are consistent with the fair administration of justice." Brown v. Beto, 377 F.2d 950, 956. In 1971 the Supreme Court in *Santobello* cemented this view into the law with these words:

> The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.
>
> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See Brady v. United States, 397 U.S. 742, 751–752 [90 S.Ct. 1463, 1470–1471, 25 L.Ed.2d 747] (1970).

404 U.S. at 260, 261.

Thus, while no problem can arise from the fact of bargaining, the failure to insist that the court be told whether pleas presented for acceptance have any part of their basis in an agreement, and, if so, the details of that understanding, may imperil our system of justice. The necessity of dealing explicitly with this factor, which could have such a significant part in the voluntariness of a plea, has been recognized by the Third Circuit's mandate for prophylactic disclosure measures in Paradiso v. United States, 482 F.2d 409, 413 (1973) and by the Fourth Circuit's requirement in Raines v. United States, 423 F.2d 526, 530 (1970), that the district courts in that circuit must add to their Rule 11 procedures a specific inquiry as to whether plea bargaining has occurred. The Committee on Rules of Practice and Procedure of the Judicial Conference of the United States has proposed amendments to present Rule 11 which would mandate such an inquiry and provide a comprehensive scheme for the regulation of any plea agreements undertaken. *See* Proposed Rule 11(d) and (e), Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure for the District Courts and the Federal Rules of Appellate Procedure, April, 1971 (G.P.O.), 52 F.R.D. 409, 416–431.[5]

■ Thirty days after the date of this opinion all district courts in this circuit shall put into effect the following supplementary practices at the time of taking pleas of guilty or nolo contendre. The court shall state that plea agreements are permissible and that the defendant and all counsel have a duty to disclose the existence and details of any agreement which relates to the plea tendered. Specific inquiry shall be made as to the existence of such an agreement before a plea is accepted. The defendant shall be placed under oath. These are minimum practices and are not intended to circumscribe any additional procedures or inquiries deemed by any

---

5. These proposed rules were approved by the Conference and transmitted to the Supreme Court on October 26, 1972. *See also* Standards Relating to Pleas of Guilty, Sections 1.5 and 3.1–3.4, American Bar Association Project on Minimum Standards for Criminal Justice, Approved Draft, 1968, and 8 Moore's Federal Practice, 2d ed. ¶ 11.05, pp. 11–81 through 11–112.

court to be pertinent to the issue of plea propriety in any case.

The judgment appealed from is in all things

Affirmed.

GOLDBERG, Circuit Judge, with whom BROWN, Chief Judge, WISDOM, GODBOLD, MORGAN and RONEY, Circuit Judges, join (concurring in part and dissenting in part):

This Circuit has recently been much vexed with the problem of bringing finality to cases initially adjudicated by means of guilty pleas. Today, in an effort to stem the rising tide of such cases we follow the path chosen by several other courts similarly vexed—an expanded inquiry pursuant to Fed.R.Crim.Proc. 11, in which the district judge probes, for the record, the details of any plea negotiations that might have occurred.[1] Believing as I do that the expanded Rule 11 proceeding promises to be a useful tool in constructing just, as well as, efficient resolutions to post-conviction attacks on guilty pleas allegedly based on broken bargains, I wholeheartedly concur in Part II of the majority opinion. I do not, however, recede one syllable from the original panel's conclusion that petitioner Bryan should have received an evidentiary hearing on his claim of a broken plea bargain, and I therefore respectfully dissent from Part I of the majority opinion.

According to 28 U.S.C. § 2255 (1970), a court facing a motion to vacate sentence must hold a hearing on the motion "[u]nless the motion and the files and record of the case conclusively show that the prisoner is entitled to no relief . . . ." As the majority recognizes, Bryan's motion and supporting affidavit alleged facts which if true would entitle him to relief. Consequently, for the district court to determine that the motion, files, and record of the case *conclusively* show that Bryan is entitled to no relief, it had to conclude that the facts he alleged simply could not be true. The original panel opinion rested on the belief that the papers in the case would not support that conclusion with the certainty required by the statute.

The "files and record" in petitioner Bryan's case contained three documents relevant to the claim of a broken bargain: the transcript of the Rule 11 proceeding when Bryan pleaded guilty to the escape charge; the transcript of Bryan's allocution and sentencing; and Bryan's own affidavit in support of his § 2255 motion.

The transcript of the taking of Bryan's guilty plea reveals full and careful compliance with the requirements of Rule 11. It also reveals that both Bryan and his attorney denied that the plea was being entered in exchange for any promises. The Government in this case argued that such full compliance with the requirements of Rule 11 should preclude later examination into the voluntariness of a guilty plea. In Fontaine v. United States, 1973, 411 U.S. 213, 93 S. Ct. 1461, 36 L.Ed.2d 169, however, the Supreme Court made it clear beyond cavil that under some circumstances a hearing must be granted to consider post-conviction attacks on guilty pleas, notwithstanding a full Rule 11 transcript.

---

1. Paradiso v. United States, 3 Cir. 1973, 482 F.2d 409, 413; Walters v. Harris, 4 Cir. 1972, 460 F.2d 988, 993, cert. denied, Wren v. United States, 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262. At least two state supreme courts have also moved in the direction of expanding the colloquy involved in taking a guilty plea in order to bring into the open the existence and nature of any bargains. *See* Paradiso v. United States, *supra*, 482 F.2d at 413 & 413 n. 1, citing People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970), and Rule 319(b), Pennsylvania Rules of Criminal Procedure, 19 P.S. Appendix. Recently the National Advisory Commission on Criminal Justice Standards and Goals, though critical of plea negotiation, recommended that until the practice can be eliminated, any agreement or bargain made should be presented in open court, on the record, for the judge's acceptance or rejection. See Standard 3.2, in 14 Crim.L.Rptr. 3001, 3003 (Oct. 31, 1973).

Of course there are factual differences between *Fontaine* and the case at bar; but in terms of the central proposition there established—that a Rule 11 transcript is not *always* conclusive for the purposes of determining the propriety of a § 2255 hearing—there are three key similarities in the two cases. There, as here, the record reflected complete compliance with the updated version of Rule 11; there, as here, the subsequent attack on the guilty plea necessarily incorporated allegations that directly conflicted with representations made at the time the guilty plea was entered; and there, as here, the subsequent attack focused on alleged incidents occurring *de hors* the record.[2] Moreover, nothing in *Fontaine* suggests that its central proposition is to be limited to the precise facts of that case.

Bryan's silence at sentencing in the face of what he alleges was the breaking of the bargain that induced his guilty plea, though certainly circumstantial evidence from which a finder of fact could infer that no deal was ever made, is not conclusive evidence justifying the denial of a § 2255 hearing.[3] In both *Fontaine* and Machibroda v. United States, 1962, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473, the petitioners had voiced no objections at sentencing, yet their silence did not foreclose subsequent hearings on their claims. The logic behind this result is clear and persuasive in the instant case:

> If the judge, the prosecution, or the defense counsel makes a statement in open court that is contrary to what he has been led to believe, especially as to promises by the prosecutor or his defense counsel, . . . [the defendant] would no more challenge the statement in open court than he would challenge a clergyman's sermon from the pulpit.

Walters v. Harris, *supra* note 2, 460 F.2d at 993, citing Trebach, the Rationing of Justice 159–60 (1964).

If, as seems to me indisputable, the transcripts of the Rule 11 proceeding and the sentencing might in some cases be inconclusive for determining whether a hearing is required on a § 2255 motion, the nature of the other documents and papers becomes crucial. A rule requiring something other than the petitioner's own affidavit as a prerequisite to going behind the official transcripts has a certain surface attraction. Nothing in the statute commands such a rule and the realities of prison life suggest that a per se rule might unreasonably and unnecessarily restrict access to the § 2255 remedy. More important, *Machibroda* seems clearly to allow a hearing on the strength of the petitioner's own affidavit without supporting papers.

2. Machibroda v. United States, 1962, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473, is also factually distinguishable from the instant case, since it occurred before the 1966 amendments to Rule 11 expanded the colloquy and the role of the court in the process of entering a guilty plea. In *Machibroda* most of the talking was done by the defense counsel, who according to the petitioner's later claims was ignorant of the alleged bargain. Both in that case and in the case *sub judice*, however, the petitioner himself did initially assure the court that the plea was voluntary, only later to challenge both the voluntariness of the plea and the truth of his own initial statements. *See* 368 U.S. at 500, 82 S.Ct. at 516, 7 L.Ed.2d at 482 (Clark, J., dissenting); United States v. Machibroda, N.D.Ohio, 1959, 184 F.Supp. 881, 885. In Walters v. Harris, 4 Cir. 1972, 460 F.2d 988, 993, cert. denied, Wren v. United States, 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed. 2d 262, the Fourth Circuit refused to make a full Rule 11 transcript, including explicit denials by the defendant that any bargain had been made, conclusive evidence that no bargain had occurred for the purpose of granting a hearing on the claim.

3. *Accord*, United States v. Simpson, 1970, 141 U.S.App.D.C. 8, 436 F.2d 162, 165–166. Of course Bryan's claim that part of the record was cut off doubtless falls close to the palpably incredible category, and is of some relevance in evaluating the other allegations in his petition. On the other hand, the fact that one frivolous claim is made does not prove *conclusively* that all the other claims are equally frivolous. What is at issue here is the propriety of granting a hearing on the claims, not the likelihood of success on the merits.

To be sure, in *Machibroda* the Government filed a memorandum in response to the § 2255 motion, attaching an affidavit in which the assistant U.S. Attorney accused of making the alleged deal emphatically denied any promises or coercion, but did admit that the meeting at which the deal was allegedly made had occurred. The admission of the meeting might be taken as sufficient corroboration of some of the details in the petitioner's affidavit to justify a hearing to explore the controverted facts. Here, on the other hand, the Government filed no response to Bryan's petition.

There may well be cases in which the utterly frivolous nature of the allegations justifies silence on the part of the Government. *See* Raines v. United States, 4 Cir. 1970, 423 F.2d 526, 529. Office efficiency might also, in some cases, justify a failure to respond to every motion filed by a prisoner. I cannot, however, understand a rule that allows the Government to decide by its silence which § 2255 motions are entitled to an evidentiary hearing; that is a decision the statute places in the hands of the district courts. More important, I can think of no other context in which the silence of one party in the face of detailed, specific allegations by an opponent is construed against the party making the allegations, and can think of no reason to do so in § 2255 cases.

In *Machibroda* a controverting affidavit from the one accused of making the bargain was insufficient to preclude a hearing on the petitioner's claim. I find it difficult to understand how the Government's silence in this case could suffice. In *Machibroda* the prisoner alleged that only the Assistant U. S. Attorney knew of the bargain; here, Bryan alleged that his own attorney as well as other co-defendants knew of it. Presumably it would not have been too difficult for the Government to respond to Bryant's petition with affidavits from the two attorneys, and perhaps from another putative witness. I concede that this course might be undesirable as a matter of economy of resources, and I do not mean to suggest that every § 2255 motion supported only by the petitioner's own sworn affidavit merits a full evidentiary hearing. Quite apart from the serious burdens such a rule would impose on already overburdened district courts, the statute itself clearly permits disposition of some § 2255 motions without an evidentiary hearing. Yet I remain convinced that under the statute, whether the Government responds or not, the petitioner is entitled, *for the purpose of deciding whether a hearing is required,* to have some weight accorded his own affidavit.

The Supreme Court in *Machibroda* suggested some distinguishing factors to be used in identifying those situations in which a hearing should be granted on the strength of a petitioner's affidavit alone. First, the Court explicitly referred on several occasions to the detailed and specific nature of the petitioner's allegations. Moreover, though the Court rejected the Government's attempt to rely on the "improbable and unbelievable" quality of the claim, it did suggest that a full hearing might not be required in a case of "palpably incredible" allegations by a prisoner. 368 U.S. at 495, 82 S.Ct. at 514, 7 L.Ed.2d at 479. The Court also recognized that since the case involved allegations that primarily concerned occurrences off the record, resort to the record alone might not cast much light on the claim. Finally, the Court noted that the "circumstances alleged" were not "of a kind that the District Judge could completely resolve by drawing on his own personal knowledge or recollection." 368 U.S. at 495, 82 S.Ct. at 514, 7 L.Ed.2d at 479.[4]

---

4. The Court suggested a limitation on its holding by citing the portion of the statute that allows an evidentiary hearing to be held without the personal presence of the prisoner: "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing." 28 U.S.C. § 2255 (1970). Nothing in the original panel opinion in this case would have prevented the district court from determining that this was the kind

There is no debating that petitioner Bryan's allegations were both detailed and specific, not "vague" or "conclusory." They also referred primarily to occurrences *de hors* the record. According to the *en banc* majority, however, two factors present in *Machibroda* but absent here do justify disposing of Bryan's case without a hearing. First, the majority believes that the district judge below could completely resolve the case by drawing on his own personal recollections or knowledge. Secondly, the majority apparently thinks that Bryan's allegations are "palpably incredible."

In response to the first point I can say only that I do not read Bryan's affidavit as necessarily implicating the district court in such a way that the judge could resolve the case from his own recollection or knowledge.[5] Bryan alleged only that his attorney told him that the judge had agreed to the alleged bargain; at no point did he allege as a matter of first-hand knowledge that the judge was a party to the bargain. Assuming arguendo that Bryan's attorney had made a bargain of some sort with the Government, it would not be unreasonable to tell Bryan that the judge was agreeable, as a way of ensuring his own agreement, particularly in light of Bryan's alleged unwillingness to waive trial. Moreover, a comparison of Bryan's affidavit with that in *Machibroda* demonstrates to me that Bryan alleged no more direct participation by the trial judge than did Machibroda. If *Machibroda* was not a case that could be completely resolved by the district judge's own knowledge and recollection, I do not see how this case can be so handled.

As to the second point, that the majority believes Bryan's allegations to be "palpably incredible" is clear from the characterization of his claim as "the utterly incredible assertion that all the former official proceedings in his cause were no more than a stultifying charade in which justice was mocked by every participant—even the judge himself." If I read Bryan's affidavit as alleging first-hand knowledge of the judge's participation, I might be inclined to agree with this characterization, but I have already indicated that I do not. Moreover, Bryan's allegations do not strike me as any more "palpably incredible" than Machibroda's claim that an Assistant U. S. Attorney had promised a deal, but only if defendant did not reveal the details to his own attorney, and all conveniently done outside the presence of witnesses.[6] More important, it seems to me that "palpable incredibility" cannot be measured in a vacuum, but rather must be determined in the light of common sense recognition of real world practices.

That the taking of a guilty plea could take on some aspects of a charade might be difficult to credit, and proving that a particular guilty plea proceeding was in fact a charade would surely be difficult, given the likely sanctions to be visited on an attorney, defense or prosecutor, who subsequently admitted participating. Yet the fact that the charade does occasionally occur is true beyond any reasonable doubt:

> At the more formal part of the pleading process, the in-court appearance at which the defendant enters his plea, the parties typically act as if no prior negotiation had occurred. Trial judges, although they are aware that negotiation for pleas is a common practice, routinely ask the defendant whether any promises have been made to him. Notwithstanding the fact

of case that could be decided without requiring the presence of Bryan himself. *See* Walters v. Harris, *supra*, note 2, 460 F.2d at 992–993; Raines v. United States, *supra*, 423 F.2d at 529–531.

5. The original panel did suggest that since Bryan alleged that the trial judge was a party to the bargain, the hearing should be held before a different judge. We did not mean to suggest that we read the affidavit as alleging first-hand knowledge of the judge's participation but rather that for the judge's sake and for the appearance of justice a different judge should conduct the hearing.

6. *See* United States v. Simpson, 1970, 141 U.S.App.D.C. 8, 436 F.2d 162, 164–166.

that the plea has been the subject of negotiation, the defendant usually answers in the negative, and the prosecutor and defense counsel seldom indicate to the contrary. . . . As a result, the negotiation process remains largely invisible, informal, and not subject to any systematic control.

American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty 61 (Approved Draft 1968).[7] Indeed, in *Machibroda* the Supreme Court held that although the prisoner claimed that he had participated in just such a charade, his allegations were not "palpably incredible."

Of course, the fact that charades have occurred in the past does not prove that a charade did in fact occur in this case; but that, I think, goes to the decision on the merits. In determining if a hearing is required under the statutory "conclusively show" standard, whether incidents of the type alleged ever do occur, or whether instead they exceed "the outer bounds of credibility"[8] is of some importance.

This brings me to the nub of my disagreement with both the district court and the *en banc* majority—that both have confused the decision on whether to grant a § 2255 hearing with the decision on the merits of the claim for relief. The original panel decided *only* that

Bryan was, under the mandate of § 2255, entitled to an evidentiary hearing on his claim. Nothing in that opinion was intended to imply that the panel *believed* Bryan's allegations to be true, nor do I mean to imply that with what I say today. Indeed, I regard his allegations as highly improbable, and am certainly doubtful that he can or should prevail on the merits. But the Supreme Court in *Machibroda* explicitly rejected "improbable and unbelievable" as the test in passing on the need for an evidentiary hearing. That petitioner is unlikely to prevail on the merits is not, to me, a proper consideration in evaluating his right under § 2255 to a hearing on his claim.

I regard this case as a close one, and one that is very near "to the line" described in *Machibroda*. The command of § 2255, however, is that a hearing is to be granted unless it is "conclusively shown" that no relief is warranted, and that can only mean that district courts are supposed to break the close ones in favor of granting hearings. The Supreme Court in *Fontaine* could not, on the basis of the record before it, "conclude with the assurance required by the statutory standard 'conclusively show' that under no circumstances could the petitioner establish facts warranting relief under § 2255. . . ." 411 U.S. at 215, 93 S.Ct. at 1463, 36 L.Ed.2d at 172. I find myself in the same position in this case.

7. The ABA's report only reaffirmed what other observers had discovered and reported. According to the President's Commission on Law Enforcement and Administration of Justice, the Challenge of Crime in a Free Society 135–36 (1967), "[u]nder existing practice the fact that [plea] negotiations have occurred is commonly denied on the record . . . ." A former Assistant U.S. Attorney with both trial and appellate criminal experience has written:

> Because of doubts over the legality of the negotiated plea, prosecutors and defense counsel typically avoid all reference in court

to the sentence to be imposed until after the plea has been tendered and accepted, and engage in the pious fraud of making a record that the plea was not induced by any promises.

Enker, Perspectives on Plea Bargaining, in the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: the Courts App. A at 111 (1967).

8. Raines v. United States, *supra*, 423 F.2d at 532 (Sobeloff, J., concurring and dissenting).