**Robert SCRIVENS, Petitioner-Appellee,**

v.

**C. Murray HENDERSON, Warden, Louisiana State Penitentiary, Respondent-Appellant.**

No. 75-2393.

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1976.

Rehearing and Rehearing En Banc Denied Jan. 16, 1976.

Joseph B. Tosterud, Jr., Asst. Dist. Atty., William Brockman, Asst. Dist.

Atty., Barbara B. Rutledge, New Orleans, La., William J. Guste, Jr., Atty. Gen., Baton Rouge, La., Harry F. Connick, Dist. Atty., Orleans Parish, New Orleans, La., for respondent-appellant.

George M. Papale, Gretna, La. (Court-appointed), for petitioner-appellee.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

The State of Louisiana appeals from the granting of habeas corpus to Ronald Scrivens, a Louisiana state prisoner. At issue is the question of whether or not the State failed to keep a plea bargain with defendant.

On October 31, 1973, Scrivens pled guilty in Louisiana state court to the offense of armed robbery, a felony carrying a minimum sentence of 5 years and a maximum sentence of 99 years. He was sentenced to 20 years at hard labor. On December 6, 1973, the State of Louisiana filed a bill of information charging Scrivens with being a multiple offender and on January 3, 1974, defendant's 20-year sentence was vacated and he was sentenced to 49½ years, the minimum sentence allowed under the Louisiana multiple offender statute.[1] Scrivens filed a petition for a writ of habeas corpus in the Louisiana state court, contending that the 49½-year sentence violated the plea bargain he entered into with the State. An evidentiary hearing was held on June 14, 1974 before the judge who sentenced Scrivens and the writ was denied. The Louisiana Supreme Court affirmed.

Thereafter, Scrivens filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Louisiana, contending that his guilty plea was involuntarily entered in that it was induced by a plea bargain that was subsequently broken, specifically that he bargained for a 20-year sentence and received one of 49½ years. The district court referred the matter to a United States magistrate whose written report recommended that the State be ordered to reimpose the 20-year sentence or allow defendant to plead anew. The district judge adopted the recommendation. The State appeals from that judgment. Our review of the proceedings in the state evidentiary hearing convinces us that the federal district court erred in granting the writ. We therefore reverse.

The law is clear "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). The record, however, fails to disclose any promise whatsoever on the part of the State in regard to the multiple offender charge for which Scrivens received the 49½-year sentence.

At the evidentiary hearing held before the state sentencing judge, Scrivens and his state-appointed attorney Robert Fleming testified on behalf of petitioner. Ralph Capetelli, the assistant district attorney who prosecuted the armed robbery case against Scrivens, and Louis Moore, another assistant district attorney who was present in the chambers of the state judge during the plea discus-

---

1. The armed robbery conviction was Scrivens' third felony conviction. The Habitual Offender Law, LSA–R.S. 15:529.1, prescribes in pertinent part that

    "A. Any person who, after having been convicted within this state of a felony . . thereafter commits any subsequent felony within this state upon conviction of said felony shall be punished as follows:

    .    .    .    .    .    .

    (2) If the third felony is such that, upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then the person shall be sentenced to imprisonment for any term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;    .    .    .."
    One-half the longest term prescribed for armed robbery is 49½ years.

sion between Capetelli and Fleming, testified for the State.

Scrivens testified that he was told by his attorney Fleming on the morning of October 31, 1973 that if he pled guilty to armed robbery he would receive a 25-year sentence. Scrivens knew that the maximum for armed robbery was 99 years, but he was not satisfied and told his attorney Fleming he wanted something less. He said that Fleming returned later the same morning and informed him that the judge would give him 20 years. Fleming's testimony and a remark by the state judge[2] to Fleming during the evidentiary hearing corroborates the fact that Scrivens was given a 20-year sentence in exchange for his plea of guilty to the offense of armed robbery. This testimony is not in dispute. What is disputed and critical to this appeal is whether or not a plea bargain was ever struck in regard to Scrivens' sentence as a multiple offender.

Scrivens testified that he had a prior criminal record, having been convicted of burglary and attempted rape in 1963 and another burglary in 1968. He further testified that on October 31 prior to his guilty plea to armed robbery, he discussed with attorney Fleming the subject of double billing[3] and multiple offenders and said that:

> "I also told him [Fleming] if I do cop out for the twenty years that this would be it all and I wouldn't be charged with no multiple offender or anything like that. He told me, he say, 'Well, no, all you would do is go up there and do the ten years and something and you'll be back on the street.'"

When pressed on cross-examination he admitted that Fleming did not promise him that the State would not double bill him.

Fleming's testimony contradicts that of Scrivens and is to the effect that no plea bargain was made relative to the multiple offender charge. He said:

"When I went back to speak to the judge the second time and the judge agreed to a sentence of twenty years, at that time Mr. Capetelli said—I asked him, I said, 'What about double billing? He said, 'Well, at twenty-five years I would be more or less satisfied, but Mr. Wimberly, who reviews all the cases for the D.A.'s Office, I can't make any promises for him and twenty years is a little bit light.' It was at this time I went back and talked to the defendant Scrivens and informed him that he stood a chance to be double billed because of his previous record. He asked me what did I mean by this and this is where we got into the discussion of—well, he understood what double billing meant. This is where we got into discussion of if he went to trial. He understood what double billing meant. The question then worked its way out as this. If he went to trial and was convicted, he would definitely be double billed. If he took the twenty years, there was a possibility that he wouldn't. And he asked my opinion and my answer was, 'Well, you're the one that's going to have to do the time. It's really your decision to make whether to take the twenty years.' At this point of being pressed, I answered, 'Well, if I were you, I would take the twenty years and run and hope that they didn't catch it on the double bill and that you wouldn't come back.'"

Fleming testified further that Capetelli said he personally would not double bill Scrivens but reiterated that the decision of whether or not to double bill was not his [Capetelli's] to make, and that the file would be reviewed by Mr. Wimberly, executive assistant in the district attorney's office. Following interrogation by counsel, the state judge addressed Fleming directly:

By the Court:

Q. When you entered the plea wherein I agreed to give him twenty years, which I subsequently did in

---

2. See the colloquy between the state judge and Fleming, *infra.*

3. The witnesses use the term loosely; actually triple billing was involved.

open court, did you have a commitment from the State of Louisiana that this guilty plea was predicated on the state not filing a multiple offender bill?

A. No, sir. The commitment was that Mr. Capetelli would not double bill him but that his decision was subject to review by Mr. Wimberly. I informed the defendant of this.

The testimony of Ralph Capetelli, the state prosecuting attorney who handled the armed robbery charge, corroborates Fleming's testimony that no bargain was made relative to the multiple offender charge. He testified:

"I informed them that—after Mr. Fleming spoke to me about the possibility of a double bill—that it was not within my province at all to make a decision on a multiple bill; that this was to be decided by Mr. Wimberly, who was the executive assistant in charge of armed robberies, whether or not this would be the case in this case because the defendant shot the guard at the community center and he was caught shortly afterwards with the money and the guns and everything. He seemed like he wanted to plead quickly. And he was advised as far as from my standpoint I made it clear to Mr. Fleming and Judge Bagert [the sentencing judge who also presided at the evidentiary hearing] in the back that I had no authorization whatsoever and the decision would be made later and that he would have to advise Mr. Scrivens of this. That was my whole position in this matter."

Capetelli was asked whether the discussion relative to double billing was incorporated in the plea bargaining, and he answered:

"It was not included in the plea bargaining because I made no mention of it one way or the other. That was clear, I believe, to Mr. Fleming and the judge."

Capetelli said that after the plea he handed his file over to Wimberly who reached a decision to file a multiple bill against Scrivens. When asked by the judge if he (the judge) had been part of the negotiations, Capetelli said:

"Judge, it was in your chambers. You were there; Mr. Fleming and myself to my recollection. After the facts were brought out and everything, Mr. Fleming mentioned the fact of the double bill. I even went back in. At one time I told you I did not have the authority. This would have to be made later on. I believe you told Mr. Fleming to make sure his client understood this point. You know, that this was a point if he wanted to plead, this was a possibility. And we even went back and Mr. Moore was in here as a section assistant at that time and we went back in and reiterated this. I think Mr. Moore was there. This was not my ability to say yes or no at this time; that it would be looked at at a later date and looked at closely because of the severity of this case."

Louis Moore, Jr., an assistant district attorney, recalled the Scrivens case. His testimony further corroborates the understanding of Fleming that Capetelli offered defendant no bargain in regard to the multiple offender charge. He testified:

"I can remember a discussion in the judge's chambers, and I can recall that Mr. Capetelli called me over and said—you know—'I want you to listen to this.' And he told Mr. Fleming that he could not guarantee that the state would not double bill because he didn't have the authority to do it. This authority rested solely in Mr. Wimberly."

In summary, the testimony of the witnesses at the evidentiary hearing indicates the following:

Capetelli made no promise not to charge Scrivens as a multiple offender as he had no authority to carry out such a promise and he so informed Fleming. Moore heard him relate this to Fleming. Fleming admitted that Capetelli so informed him and that he in turn relayed the information to Scrivens. It was only

Scrivens, the defendant, who testified to the contrary—that he was promised that he would not be multiple billed.

Thus it is apparent why the state court denied defendant's petition for habeas relief. Not only did the testimony regarding events on October 31 weigh against defendant, there were other circumstances which indicated that no plea bargain was made in regard to the multiple offender charge. Scrivens testified that when he was brought back into court in December of 1973 on this charge he did not inform the court that he had been promised that he would not be multiple billed. Moreover, Scrivens was allowed to examine documents formerly signed by him evidencing his pleas of guilty to both charges, armed robbery and multiple offender, in which he stated that no one had made any promises to induce a guilty plea.[4] Scrivens read the documents and agreed that no one had forced him to sign them nor to plead guilty.

In granting defendant's petition for writ of habeas corpus the United States District Court relied on the magistrate's report which does not comport with the evidence. The magistrate reasoned that Scrivens, after refusing to accept a 25-year sentence, bargained for a 20-year sentence with the understanding that he would not be multiple billed and that it would be "illogical" for defendant to have entered into a bargain for 49½ years, when "he could have received twenty-five years for certain." Except for Scrivens' self-serving testimony, there is nothing in the hearing transcript to show affirmatively that a 25-year sentence was ever offered or that a promise not to multiple bill was made; the testimony is to the contrary. Plea bargaining "must have explicit expression and reliance and is measured by objective, not subjective, standards. . . ." *Johnson v. Beto,* 5 Cir., 1972, 466 F.2d 478, 480. Applying those standards, it is clear that no bargain was made in re-

gard to the multiple offender charge and defendant's attempt to come within the principles of *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), in which the Court bound a prosecutor to a plea bargain made by his predecessor, is unavailing.

It is obvious that Scrivens acted on a hope, nothing more, and mere expectation or hope does not constitute plea bargaining. *Johnson v. Beto, supra,* 466 F.2d at 480.

Reversed and writ denied.

4. This type of in-court declaration has been held to bar further litigation on the question of whether a plea bargain was made. *See Bryan v. United States,* 5 Cir., 1974, 492 F.2d 775, *en banc.*