**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph J. MAGGIO,
Defendant-Appellant.**

**No. 74–2629.**

United States Court of Appeals,
Fifth Circuit.

June 9, 1975.

Rehearing and Rehearing En Banc
Denied Aug. 13, 1975.

---

Carl M. Walsh, Chicago, Ill., for defendant-appellant.

Ira Dement, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before GOLDBERG and RONEY, Circuit Judges, and LYNNE, District Judge.

RONEY, Circuit Judge:

Choosing to forego his right to a jury trial, Maggio pled guilty to one count of an eight count mail fraud indictment. After he was sentenced to two years incarceration, he moved to vacate his guilty plea alleging that the plea was involuntary, and that the district court failed to comply with Rule 11, F.R. Crim.P., and with the mandate of this Court in Bryan v. United States, 492 F.2d 775 (5th Cir. 1974) (en banc). The district court denied the motion. We affirm, but not without expressing concern that had the district court followed the spirit of *Bryan,* this litigation, both in the trial court and here, could have been avoided.

Prior to this case, in December 1972, the defendant Joseph J. Maggio was tried before a jury in the District Court for the Middle District of Alabama with Chief Judge Frank M. Johnson presiding. The jury found him guilty of seven counts of mail fraud, 18 U.S.C.A. § 1341, and one count of conspiracy to violate the laws of the United States, 18 U.S. C.A. § 371. Chief Judge Johnson sentenced Maggio to three years in the custody of the Attorney General. Maggio appealed to this Court where his conviction was set aside because of the improper introduction of some hearsay evidence, telephone company records which had not been properly authenticated. *See* United States v. Blake, 488 F.2d 101 (5th Cir. 1973). The events ensuing subsequent to that decision give rise to the problems we must now confront. A discussion of the facts in detail, revealed by the testimony at the evidentiary hearing on the Motion to Vacate Sentence, will illuminate the nature of defendant's contentions.

After reversal of the first conviction, the case against Maggio was calendared to be retried by jury, again before Chief Judge Johnson, on May 13, 1974. Approximately ten days or two weeks prior to that trial date, Maggio's counsel, Carl M. Walsh, at Maggio's request, contacted the First Assistant United States Attorney who was going to prosecute the case,

D. Broward Segrest, and they had the first of a series of conversations regarding a possible change in Maggio's plea from not guilty to guilty.

During the first couple of conversations, Segrest, in response to queries by Walsh, delineated the Government's position on the negotiations. First, the United States would move to dismiss Counts 2–8 of the indictment if Maggio would plead guilty to Count 1, a mail fraud count. Second, the Government would be willing to recommend a probationary sentence if Chief Judge Johnson would allow any sentence recommendation from the Government.

Segrest made it clear that it was the policy of the District Court for the Middle District of Alabama not to ask for nor to accept sentence recommendations from United States Attorneys in relation to guilty pleas, and therefore, Segrest could not agree to a bargain based on a suggested sentence. The most Segrest could do was to stand mute at time of sentencing and not to insist on a prison sentence, as he had done when Maggio was convicted by the jury. Segrest suggested to Walsh that allocution on behalf of Maggio would be the only chance to seek a more lenient sentence from the court and that Segrest's silence would render Walsh's request unopposed, perhaps resulting in a lighter sentence for Maggio. Segrest did offer, in exchange for a guilty plea, to inform the Probation Office, for inclusion in the presentence investigation report to the judge, that the United States would recommend probation for Maggio.

After these conversations Walsh consulted with Maggio on various occasions and conveyed to him the substance of the negotiations with Segrest. Maggio was unsure of exactly which days the particular information was conveyed to him, except he remembered the conversations of Wednesday, May 8, 1974, and Thursday, May 9, 1974. Nonetheless, he was told everything that transpired between Walsh and Segrest. Maggio initially told Walsh that if Segrest could and would make a probation recommen-

dation in open court, he would be willing to plead guilty to one count of mail fraud.

At Walsh's request, Segrest personally approached Chief Judge Johnson, and asked him if he would make an exception and accept a recommendation from the Government on Maggio's sentence. Segrest was told that the judge would neither allow nor accept a sentence recommendation in this case inasmuch as the judge did not want the defendant to be misled as to the effectiveness of such a recommendation.

Segrest telephoned Walsh and told him that Chief Judge Johnson would not allow the United States to recommend a sentence. Walsh told Segrest that under that circumstance, the Government would probably have to try Maggio, but that he would consult with Maggio and let Segrest know his decision definitely by the Wednesday before the trial was to be held on Monday, May 13. Walsh informed the defendant that the Court would not allow the Government to recommend a sentence, and Maggio told Walsh that he wanted to be tried. Walsh telephoned Segrest on Wednesday, May 8, 1974, and told him of Maggio's decision.

After he had directed Walsh to inform Segrest that a trial would be necessary, Maggio unilaterally began reconsideration of his decision and ultimately changed his mind without further consultation with Walsh. Defendant detailed why he decided to plead guilty. He testified that generally the "sequence of events" in the various telephone conversations made him feel that he would receive a light sentence, probably probation, but at most four months incarceration. He said he thought that since he had received only three years after being convicted by a jury of eight counts, he would probably get much less for only one count. He viewed the prosecution's change from insisting on incarceration at his first trial to standing mute at his second sentencing as a good indication he would receive leniency from the court. The fact that he would save the Government the time and expense of a jury trial would also be in his favor, Maggio believed. But neither his own lawyer, the United States Attorney nor the Court ever made any promise to him regarding a probable sentence. Maggio also related reasons other than his anticipation of leniency which induced him to change his mind and plead guilty. He figured that if he had to have any "blemish on his record," he would be better off if it was for only one count than if it was for eight counts, and he felt that a guilty plea to one count would be easier on his family and would save him some money.

Having reached his decision, Maggio contacted Walsh on Thursday afternoon, May 9. Walsh contacted Segrest and told him that Maggio would plead guilty to Count 1 in exchange for the Government's dismissal of the other seven counts. Segrest agreed. After some negotiations between Walsh and Segrest regarding when the plea could be taken, Segrest informed the court of Maggio's decision and was given permission to notify the Government's witnesses that they need not come to court for the scheduled trial.

Maggio's case was called Monday, May 13, 1974, at approximately 10:00 a. m. With Chief Judge Johnson presiding, Walsh moved to change his client's plea to Count 1 from not guilty to guilty. The court then proceeded to hold a non-*Bryan* type guilty plea hearing, similar to those held when plea bargaining was an under-the-counter process requiring denial in open court. The defendant was not placed under oath. The court did not state that plea agreements are permissible and that defendant and all counsel have a duty to disclose the existence and details of any agreement which relates to the plea tendered. The court did, however, address the defendant personally and determined, to its satisfaction, that the plea was made voluntarily with understanding of the nature of the charge and the consequences of the plea.

The court asked Maggio if he concurred in the motion, and the defendant

responded, "Yes, sir." After some discussion, the court asked if there had been any agreement between the Government and the defendant in this case. Segrest informed the court that the only agreement was that if there was a guilty plea to Count 1, the Government would not insist on the other counts. The court asked both Walsh and Maggio if this was the only agreement that either of them knew about and both responded that it was.

The court then directed a number of questions to Maggio: (1) had anyone promised him anything other than the dropping of seven counts in order to induce him to plead guilty in this case; (2) had anyone told him what his sentence would be if he pled guilty; (3) had he received any threats or promises of any kind, other than the dropped charges, in order to have him plead guilty. To each question Maggio responded, "No, sir."

The court next informed the defendant of the maximum sentence possible for the count to which he was pleading guilty and asked Walsh if that was what he had previously advised his client. Walsh said it was. Chief Judge Johnson then accepted the guilty plea and, at the request of defendant's counsel, set sentencing for 5:00 p. m. the same day. Subsequently, Segrest moved to dismiss the other seven counts against Maggio, and the court granted the motion.

After the plea session, but before sentencing later that same day, Segrest received a telegram from Assistant United States Attorney Frank Murtha, Jr., of Chicago, Illinois. The telegram stated that Maggio had provided assistance to the United States which had resulted in a number of indictments and convictions in Chicago and based upon this, Murtha would recommend that Maggio be given a probated sentence. Segrest took this telegram to Chief Judge Johnson who informed Segrest that he was not willing to accept the telegram or to place any reliance on it alone. The court contacted a local F.B.I. agent to have the telegram verified. The agent contacted the Chicago field office of the F.B.I. and was told

that the telegram was generally true, except that there had been no convictions as yet. In addition, the Chicago office told the agent that Maggio was a valuable informant, and that they would like to "keep him on the streets." This information was relayed to the court.

At about 4:00 p. m., after he had given the telegram to Chief Judge Johnson, Segrest told Maggio of the telegram and said something like "Don't worry, things look good." Maggio testified that this comment by Segrest did not affect his decision to plead guilty, which had been made the previous week in Illinois, but that it did reenforce his belief that he would be leniently treated by the court at sentencing.

Sentencing took place at five o'clock as scheduled. Walsh made a lengthy statement detailing why the court should be lenient in sentencing Maggio, urging that incarceration of his client would serve no useful purpose and that probation would be an appropriate penalty. The court asked Maggio if he wanted to make a statement and if he knew of any reason that he should not be sentenced. To both questions the defendant responded, "No." The court then imposed a sentence of two years incarceration. There was further discussion, not material here, concerning when and where sentence was to commence and bond pending commitment. Maggio was given permission to report to enforcement officers in Illinois to commence his sentence.

A week later, on May 20, 1974, Walsh filed for Maggio a Motion to Withdraw Plea of Guilty alleging that (1) the plea was involuntary and without full knowledge of the consequences, (2) the court failed to comply with Rule 11, F.R. Crim.P., in accepting the plea, and (3) the court, in accepting the plea, failed to comply with the mandate of this Court's en banc decision, Bryan v. United States, 492 F.2d 775 (5th Cir. 1974). Chief Judge Johnson held a hearing on the motion on May 24, 1974, at which the above stated facts were disclosed. At the end of the hearing, the court denied

the motion and entered its findings and conclusions in the record.

The court found that there was no agreement regarding the sentence or a recommendation of sentence between the United States and either Walsh or Maggio. Rather, Walsh was clearly advised that the court would not accept any such recommendation regarding sentence. The court specifically found that Maggio had a subjective expectation of probation, but that expectation grew solely out of the defendant's own mental processes and was not based on anything the United States told him or his counsel. The court concluded, therefore, that the totality of the circumstances did not justify Maggio's belief.

Chief Judge Johnson also found substantial compliance in all respects with Rule 11. The court had received an affirmative reply to its query of Maggio on whether he concurred in the plea motion. The factual basis of the plea was known to the court through the presentence report, as well as the court's previous presiding over Maggio's first trial where Maggio was convicted of all eight counts. The first trial also provided Maggio with an understanding of the nature of the charges against him and with an appreciation of the elements of the crime, the court found. Thus, the court concluded that Maggio's plea was voluntary and with full knowledge of the circumstances.

Regarding the requirements of *Bryan,* the district court held that its failure to comply with that opinion fully was not a basis for setting aside the plea. The trial court viewed *Bryan* as imposing requirements only on those district courts in the Fifth Circuit which allowed plea bargaining regarding the sentence to be imposed, but not as *requiring* a court to allow such a bargain. The court concluded that as far as necessary when such bargaining was not allowed, it had complied with *Bryan.*

Maggio asserts these same three grounds for reversal on this appeal. First, the guilty plea is void because the district court failed to comply with the strict requirements of Rule 11, F.R. Crim.P. Second, the guilty plea is void because, based on an evaluation of the totality of the circumstances, Maggio did not understand the consequences of his plea at the time it was given. Finally, the guilty plea is void because of the trial court's failure to comply with the specific mandate of the *en banc* decision of this Court in Bryan v. United States.

### Rule 11 Compliance

Defendant's first contention that the district court failed to comply with the mandatory provisions of Rule 11, F.R.Crim.P., is without merit. Rule 11 prohibits the court from accepting a guilty plea "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."[1] The Rule has a two-fold purpose: *first,* to assist the district court in making the constitutionally required determination that a defendant's guilty plea is truly voluntary, and *second,* to produce a complete record, at the time the plea is entered, of the factors relevant to this voluntariness determination, thereby eliminating any need to resort to later fact-finding proceeding in this highly subjective area. McCarthy v. United States, 394 U.S. 459, 465, 469–470, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Monroe v. United States, 463 F.2d 1032, 1035 (5th Cir. 1972).

---

1. In its entirety, Rule 11, F.R.Crim.P., provides:

A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

■ The Supreme Court, acting under its supervisory power in *McCarthy,* created an "automatic prejudice" rule to be applied whenever a guilty plea is accepted by a district court without meticulous adherence to the procedures dictated by Rule 11, which prejudice generally entitles the defendant to an opportunity to plead anew if the issue is raised on direct appeal. *See, e. g.,* United States v. Davis, 493 F.2d 502 (5th Cir. 1974); United States v. Bethany, 489 F.2d 91 (5th Cir. 1974); United States v. Blair, 470 F.2d 331 (5th Cir. 1972), cert. denied, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197 (1973). But the Supreme Court refused to establish any general guidelines of necessary procedures other than those expressed in the Rule itself, noting that the nature of the inquiry required by Rule 11 must necessarily vary from case to case with matters of reality, and not mere ritual, to control. McCarthy v. United States, 394 U.S. at 467 n. 20, 89 S.Ct. 1166. We think the record affirmatively shows that Rule 11 was substantially complied with in this case.

The district judge who presided at defendant's guilty plea was the same district judge who had presided over Maggio's previous jury trial on the same indictment. At that trial, which Maggio attended, the Government presented all of its evidence against Maggio, disclosing the facts upon which the charges were brought. The defendant heard the district court charge the jury fully on the law upon which the indictment was based, and the relationship between the law and the facts. Twelve jurors then found Maggio guilty of all eight counts in the indictment, including the one to which he subsequently pled guilty. These convictions were reversed by this Court, not because of any lack of sufficiency of the evidence or confusion at the trial as to "the nature of the charge," but on a technical evidentiary ruling involving an improper predicate for receiving into evidence telephone company records.

■ At the plea taking session the district judge had personal knowledge of the previous trial, Maggio's presence at that trial, and the jury's conclusion that Maggio was guilty of the count to which the plea was directed. Under such a circumstance, the district court was justified in determining that Maggio understood the nature of the charge, without going through a ritualistic procedure that is necessary in the average case.

The same circumstances fulfilled the requirement that the court "be satisfied that there is a factual basis for the plea," which is another requirement of Rule 11. *See, e. g.,* Jimenez v. United States, 487 F.2d 212 (5th Cir. 1973), cert. denied, 416 U.S. 916, 94 S.Ct. 1623, 40 L.Ed.2d 118 (1974).

We therefore conclude that the requirements of Rule 11 were adequately met under the facts of this case.

### Voluntariness of the Plea

■ It is axiomatic that a guilty plea is invalid unless voluntarily given by a defendant with a full understanding of the possible consequences of the plea. *See, e. g.,* Brady v. United States, 397 U.S. 742, 748–749 n. 6, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); United States v. Blair, 470 F.2d 331, 339 (5th Cir. 1972), cert. denied, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197 (1973) and cases cited therein. The Rule 11 provision that a defendant must be shown to understand "the consequences of his plea" does not mean that he must know the sentence that he will receive. Ruiz v. United States, 494 F.2d 1, 3 (5th Cir.), cert. denied, 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974). It merely means that he must understand the length of sentence and amount of fine he might possibly receive. Maggio clearly had this understanding. He had previously received a three-year sentence on this same count, voided by the reversal of his conviction. There was discussion in his presence between the attorneys and the court at the plea taking session as to the exact count of the eight charged in the indictment to which he was pleading, and the maximum sentence allowed. The court directly addressed the defend-

ant, stating "1341 carries a maximum punishment of not more than one thousand dollars or five years in the penitentiary or both."

Maggio asserts, and the district court found, that he truly believed that he would get no more than four months incarceration and that he probably would get only probation with no jail sentence. Since he did not believe that his probable sentence would be as severe as the two years incarceration he received, Maggio contends that his guilty plea was made without actually "knowing" of the consequence.

 The courts have consistently held that the subjective belief of a defendant as to the amount of sentence that will be imposed, or the hope for leniency, unsupported by any promises from the Government or indications from the court, is insufficient to invalidate a guilty plea as unknowing or involuntary. *E. g.,* United States v. Battle, 467 F.2d 569, 570–571 (5th Cir. 1972); Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972); United States ex rel. Curtis v. Zelker, 466 F.2d 1092, 1098 (2d Cir. 1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973); Wellnitz v. Page, 420 F.2d 935, 936–937 (10th Cir. 1970); Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967); *see* United States v. Frontero, 452 F.2d 406, 411–412 (5th Cir. 1971). The information provided to Maggio and his attorney by the United States made the position of the Government clear: The district court would not allow the Government to make a recommendation because this might imply that the court would accept it, when in fact the court was at liberty to ignore the recommendation entirely.[2] *See, e. g.,* United States v. Hernandez-Salazar, 471 F.2d 1209 (9th Cir. 1972). Walsh told this to Maggio, and the court made it clear at the time it accepted the

plea what maximum sentence could be imposed.

 In the face of these uncontroverted facts the trial court found Maggio's plea to have been voluntary. We cannot hold that finding to be clearly erroneous. *See* Holland v. United States, 406 F.2d 213, 216 (5th Cir. 1969).

*Compliance with Bryan v. United States*

 We are thus brought face to face with this issue: does the failure of the district court to comply strictly with *Bryan* requirements necessitate vacation of a guilty plea in the absence of a showing of prejudice? We hold it does not, but point out the legal and judicial effort that has been required because of such noncompliance in this case.

 In the first place, as we later develop, the district court was wrong in considering *Bryan* inapplicable to its practice. Although the court would not accept recommendations as to sentence, it did recognize bargains as to the dropping of charges. To this extent then, at least, it should have had defendant under oath, and advised that such bargains were permissible. Permitting some bargains but refusing others means that the court should directly advise which bargains are not permissible, in order to give a clear record of the plea-taking negotiations and process and to foreclose the kind of evidentiary hearing and full-scale appeal that was required in this case.

This Court's en banc decision in Bryan v. United States, 492 F.2d 775 (5th Cir. 1974), was in response to the increased incidence of attacks on guilty pleas based upon agreements reached after negotiations between prosecutors and defendants. In our supervisory capacity we established the minimum procedures we considered to be commensurate with both the letter and spirit of Rule 11,

---

**2.** The hearing below and oral argument in this Court were complicated somewhat by the dual role filled by both the United States Attorney and Maggio's defense counsel, *i. e.* witness at the evidentiary hearing and advocate. At oral argument a factual dispute arose over a matter neither side had explored in the hearing below but which we find irrelevant. Both attorneys had difficulty separating their somewhat contradictory roles.

F.R.Crim.P. and the Supreme Court decisions regarding "plea bargaining." *See, e. g.,* Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). The *Bryan* supplementary procedure is similar to that which would be required by the proposed revision to Rule 11 which is presently awaiting Congressional action. *Compare* Bryan v. United States, 492 F.2d at 780–782 *with* Proposed F.R.Crim.P. 11, 62 F.R.D. 275–277 (1974). *Bryan* requires (1) that the defendant be placed under oath at the time of taking his guilty plea, (2) that the district court shall state that plea agreements are permissible and that the defendant and all counsel have a duty to disclose the existence and details of any agreement which relates to the plea tendered, and (3) that specific inquiry be made as to the existence of such an agreement before a plea is accepted. 492 F.2d at 781.

This case demonstrates the type of problems which can arise when the trial court does not make clear to the defendant the court's position regarding agreements between the prosecutor and the defendant. Maggio was told that the judge would not allow a sentence recommendation "in open court," and from this he surmised, incorrectly, that certain "behind the scenes" contact would be possible. As a consequence, he did not believe that the maximum possible sentence stated by the judge at the plea session was truly a possibility. Maggio's confusion could have been obviated had the *Bryan* procedure been adapted to the plea session in this case. As it is, we are once again confronted with a defendant expecting "secret" contacts and consequently, mired in a peripheral matter such as we had hoped to avoid by our decision in *Bryan.*

Chief Judge Johnson does not participate in plea negotiations and will not accept sentence recommendations from the United States Attorney when a guilty plea is tendered. The court's apparent reason for foreclosing this option is to avoid suggesting to the accused

what sentence actually will be imposed if he pleads guilty. Sentencing is ordinarily solely within the discretion of the trial court, which may accept, reject or ignore any prosecutorial recommendation, if one is given. The prosecutor may not, therefore, properly promise any defendant that he will receive a certain sentence if he pleads guilty to a charge. The United States Attorney does have the authority, generally, to make a recommendation regarding sentence, and it is the defendant's belief that such a recommendation will be considered by the sentencing court that makes such a recommendation a potential *quid pro quo* in plea negotiations. On the other hand, a recommendation to any court that does not plan to follow it or give it consideration may well mislead the defendant. The district judge in this case, for example, would not consider any prosecutorial sentence recommendation in setting the sentence, instead making his own independent judgment of the appropriate sentence. The court recognized that to mislead the defendant by permitting prosecutorial recommendations could, in some circumstances, adversely affect the voluntariness of the plea, even though the plea bargain would have been unquestionably kept. *See, e. g.,* United States v. Frontero, 452 F.2d 406 (5th Cir. 1971); Holland v. United States, 406 F.2d 213 (5th Cir. 1969). Under the circumstance of this case, neither the Government nor the defendant has suffered any loss when the court merely refuses to allow the prosecutor to suggest a sentence, which suggestion the court intends totally to disregard.

 Apparently at the time the plea was accepted the trial court below viewed *Bryan* as applying only either to plea sessions wherein the Government was to give a sentence recommendation or to plea sessions involving an agreement where the judge had taken an active role in the negotiation of its terms. This Court noted sometime ago that a variety of reasons support a trial judge's refusal to participate in plea discussions. Brown v. Beto, 377 F.2d 950, 957 n.4 (5th Cir. 1967). *See also* ABA Standards,

Pleas of Guilty, § 3.3; Proposed Rule 11(e)(1), F.R.Crim.P. Since *Bryan* could not be limited only to situations involving a practice which has been disapproved, the district court must have considered *Bryan* limited to plea agreements involving a plea recommendation, such as the one in *Bryan* itself. This reads the *Bryan* opinion too narrowly. The holding on the merits of the defendant's claim in *Bryan* was of necessity directed to a situation involving a sentence which the defendant anticipated to be imposed, as that was the factual setting of that case. But Part II of the opinion, on which the en banc court was unanimous, was intended to apply to all district courts in the Fifth Circuit and not just to those which accept sentence recommendations. *Bryan* was not meant to create an immutable litany applicable only in factual settings similar to its own.

An agreement reached after "plea bargaining" may encompass much more than the prosecutor's agreeing to recommend a particular sentence to the sentencing judge. *See* Swanson v. Estelle, 492 F.2d 115, 117 (5th Cir. 1974). As in this case, it may entail a defendant pleading guilty to one count in exchange for the prosecutor's dropping other counts. United States v. Cawley, 481 F.2d 702, 709 (5th Cir. 1973); *cf.* United States v. Vale, 496 F.2d 365 (5th Cir. 1974). A defendant may plead guilty in exchange for the Government's dropping an enhancement provision in the indictment. Swanson v. Estelle, 492 F.2d 115, 117 (5th Cir. 1974). A guilty plea may be entered by a defendant to a lesser included offense in order to limit the maximum possible sentence which he might receive. United States v. Ammidown, 162 U.S.App.D.C. 28, 497 F.2d 615 (1973). The Government might exchange dropped counts for information which the defendant agrees to provide. United States v. Owen, 492 F.2d 1100, 1106–1109 (5th Cir.), cert. denied, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974). There are numerous other variations. *See, e. g.,* United States v. Ross, 493 F.2d 771 (5th Cir. 1974); United States v. Hamilton, 492 F.2d 1110 (5th Cir. 1974); 8 Moore's Federal Practice ¶¶ 11.05–11.06 (2d ed. 1975). Only one option normally available for offering by the prosecutor, a sentence recommendation by the prosecutor to the sentencing court, was apparently foreclosed by the trial court in this case. *See, e. g.,* Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); Dames v. Wainwright, 491 F.2d 1098 (5th Cir. 1974).

Primary responsibility for the administration of each of the numerous components of these various plea bargains does not necessarily rest with the district court. Where the prosecutor has primary responsibility for the administration of a particular element of our system of justice, the district court's role becomes secondary and complementary to that of the prosecutor. For example, the Court of Appeals for the District of Columbia Circuit views the district court's authority to restrict or reject certain types of plea bargains as being limited to insuring that the United States Attorney has not abused the discretion which is inherent in the prosecutorial position. *See* United States v. Ammidown, 162 U.S.App.D.C. 28, 497 F.2d 615 (1973). *Ammidown* contains the most extensive judicial discussion we have found concerning the roles of the prosecutor and the court in the plea bargaining scenario.

This Court has also addressed the question to a limited extent. For example, we have held that once Rule 11 has been satisfied, and a reasonable effort must be made to satisfy it, a district judge cannot refuse a negotiated guilty plea except for "good cause." United States v. Martinez, 486 F.2d 15, 20–22 (5th Cir. 1973). Finding good cause absent in *Martinez*, this Court allowed the defendant to enforce such an agreement after the judge had refused his guilty plea and even after the defendant had been convicted of the counts which the Government had originally agreed to dismiss. *See* United States v. Martinez, 486 F.2d at 21–22. When *Martinez* is viewed

in conjunction with the Federal Rules of Criminal Procedure, it suggests that the district court may not prohibit all plea negotiations between the prosecutor and the defendant. *Martinez* in effect gives a defendant a conditional right to have his guilty plea accepted, while Rule 48(a), F.R.Crim.P. allows the United States Attorney to dismiss an indictment, thereby terminating the prosecution. Although the dismissal requires leave of the court, the court cannot refuse the dismissal except in limited circumstances. *See* United States v. Ammidown, 162 U.S.App.D.C. 28, 497 F.2d 615 (1973). Combined, these legal authorities suggest that the district court may not issue a blanket proscription of plea agreements of the kind where the prosecution drops some charges in exchange for the defendant's guilty plea to other charges.

This was the only type of plea bargain which was reached in this case, and the district court properly accepted it. In spite of the district court's recognition of plea agreements, at least to a certain extent, it believed that *Bryan* did not apply. At the hearing on the motion to vacate Maggio's sentence, the court addressed itself to the *Bryan* contention:

The fact that the Court did not state, and I mention this because it is in the motion, that pre-arrangements are permissible, that Bryan requires that, I don't think that Bryan requires that the Court that doesn't allow pre-arrangements to state that. It does not constitute a basis for setting a plea and a sentence aside. If agreements between the Government Counsel and Defense Counsel to the effect that if the Court accepts a plea to one count, other counts will be dropped, constitutes plea bargaining, then the record which has been filed in this case, the colloquy in open court at the time the plea was accepted, reflects that the Court did recognize such agreements, and in granting the motion to dismiss the other counts, honored the agreement.

The Court was not made aware of any other arrangements or agreements, if there were any. I found that there weren't.

Thus, the record in the case shows that the district court did recognize plea arrangements and, in fact, honored the one made in this case. Under such a circumstance, the district court should have complied with our mandate in *Bryan* as far as possible. As *Bryan* recognized, the plea negotiation process is no longer to be kept in the shadows. It must be completely exposed to the light of day. The problems do not arise from the *fact* of bargaining, but from a failure of communication between the courts and defendants, who should fully understand the process and its parameters in order to enter a guilty plea fully understanding its consequences.

█ It is beyond dispute that *Bryan* requires a district court which permits plea agreement to inform the defendant of that fact. Furthermore, if the court does not allow certain types of agreements, such as agreements under which the Government is to recommend a sentence to the court, the court should tell this to the defendant and explain why the court has imposed such a limitation on the prosecutor's authority. Then when the defendant is under oath he should be expressly asked if he knows of any agreement involving the forbidden option. It is imperative that the court make sure that the defendant is fully aware of the possible consequence of his guilty plea. Had *Bryan* been followed and the defendant told that he had a duty to disclose the existence and details of any agreement which related to the proposed sentence, this case may have been finally disposed of by the guilty plea.

We see no prejudice requiring reversal, however, from the district court's failure to comply fully with the *Bryan* mandate. The *Bryan* requirement that a defendant be placed under oath was to preclude collateral attacks on a guilty plea by a defendant asserting that his representations to the court when he entered the plea were fabricated. Here the facts uncovered at the subsequent

hearing on Maggio's motion to vacate his plea did not contradict or discredit his statements made at the time he entered his plea. On the contrary those facts demonstrated that the agreement disclosed to the court was the only agreement and that it was fully consummated by the Government. While the district court did not state that plea agreements were acceptable, it did inquire into the existence of any plea agreement.[3] Maggio then accurately apprised the court of the existence and terms of the only such agreement.

We wish to emphasize, however, that *every* district court in the Fifth Circuit is to comply with the *Bryan* mandate, modified to reflect each court's individual practices. We do not decide in this case, however, the panoply of plea negotiations a district court must permit. That decision is better left to appropriate cases involving concrete controversies over the issue. *Cf.* United States v. Ammidown, 162 U.S.App.D.C. 28, 497 F.2d 615 (1973).

To summarize, we do hold that at the least *Bryan* requires a court which recognizes any form of plea agreement so to inform the defendant, and to explain the limitations the court may impose on such arrangements. When the defendant is placed under oath, as required by *Bryan,* he should be asked for the details of any arrangement, and specifically queried as to any arrangement of the kind which is not permitted by the court.

If the failure to do this creates prejudice to the defendant, he must be allowed to plead anew. Being unable to find any prejudice here, however, we affirm the district court's denial of Maggio's motion to vacate his guilty plea.

Affirmed.

---

3. At the time Maggio's guilty plea was entered the following colloquy took place:

THE COURT: 1341. In the meantime, I will ask these questions. *Has there been any agreement between the Government and the defendant in this case?*

D. BROWARD SEGREST: The only agreement is that if the plea to count one is accepted, the United States will not insist on the other counts.

THE COURT: *Is that the agreement?*

CARL M. WALSH: Yes, sir.

THE COURT: Has there been any other agreement?

CARL M. WALSH: No, sir.

THE COURT: *Has there been any other agreement insofar as you know, Mr. Maggio?*

JOSEPH J. MAGGIO: No, sir; no, sir.

THE COURT: Has anyone promised you anything other than what the lawyers just recited in order to induce or get you to plead guilty in this case?

JOSEPH J. MAGGIO: No, sir.

THE COURT: To count one?

JOSEPH J. MAGGIO: No, sir.

THE COURT: Has anyone told you what your sentence would be if you pleaded guilty in the case?

JOSEPH J. MAGGIO: No, sir.

THE COURT: Have you received any threats or promises of any kind other than what the United States Attorney and your lawyer, Mr. Walsh, just recited to me in order to get you to plead guilty in this lawsuit?

JOSEPH J. MAGGIO: No, sir.

(Emphasis supplied).