KENNETH RAY POTTER

*v.*

RICHARD MOHN, *Acting Superintendent, West Virginia Penitentiary as successor to Bobby J. Leverette*

(No. 14336)

Decided July 17, 1979.

*E. Dennis White, Jr., and Bernard T. Nibert, II*, for relator.

*Chauncey H. Browning*, Attorney General, *Richard L. Gottlieb*, Assistant Attorney General, for respondent.

MILLER, JUSTICE:

This original proceeding in habeas corpus presents the question of whether relator's guilty plea was voluntary.

Relator Kenneth Potter, his brother Roy Potter, and William Frye were arrested for the armed robbery of a store. All three were indicted for armed robbery. One attorney was retained to represent all three men.

In this habeas corpus proceeding, the attorney testified by deposition'that both Kenneth and Roy Potter claimed they had not been at the store at the time of the robbery. He indicated that Frye, who had previously pleaded guilty, was subpoenaed by the State for the Potters' trial, and that the Potters had informed him that Frye would not undermine their alibi defense. The attorney in his deposition suggested that Frye's testimony would have been inconsistent with the Potters' alibi, since he had learned that Frye would implicate the Potters.

The habeas corpus record discloses that both Potters expected the case to be tried, and had assembled several relatives who could testify in support of their alibi defense.

On the day of the trial, the Potters and their attorney appeared, the case was called for trial and a jury impaneled. At this point a recess was declared. During the recess, the Potters were informed by their attorney that a key prosecution witness, a distant relative of the Potters who they had thought could not be located, had been found. While the habeas corpus record does not disclose the full extent of the testimony expected to be given by the relative, it does suggest that she would have implicated the Potters as having had possession of goods obtained in the armed robbery.

The Potters' attorney then advised them that a successful defense of the case was hopeless. He informed them that he had discussed a plea bargain agreement

with the prosecuting attorney, and that the prosecutor would be willing to accept a guilty plea and to recommend that the court impose a ten-year sentence. It was pointed out to the Potters that, if convicted, the maximum sentence could be life.

Several relatives of the Potters were present when this discussion between the Potters and their attorney took place. The relatives indicate that both of the Potter brothers were visibly shaken at this turn of events, and this was confirmed by the Potters' attorney in his deposition. During the time the plea bargain was being discussed, the court bailiff entered the room. The bailiff recommended to the Potter brothers that they accept the proposed plea bargain. He expressed to them his view, based on his years of courtroom experience, that if the case were tried and they were convicted, the judge would impose a much longer sentence than ten years.[1] After the bailiff's conversation, Roy Potter stated he would accept the plea bargain.

Relator Kenneth Potter, who the record demonstrates was more upset than his brother, indicated he did not want to accept the guilty plea. He was then informed by the attorney that the plea bargain had to be accepted by both brothers or not at all. Shortly thereafter, both Potters agreed to accept the plea bargain agreement.

The parties then returned to the courtroom. The court was advised of the plea bargain agreement, and proceeded to accept the guity pleas. During the taking of the guilty pleas, the court asked Kenneth Potter if his guilty plea was voluntarily, and he responded, "I have no

---

[1]The habeas corpus record varies on the bailiff's testimony. He recalls stating that the sentence might be twenty years. The Potters and their attorney recalled that he stated thirty years. The Potters thought the bailiff had been sent into the room by the judge and that the discussion of a longer sentence was a direct representation of the judge's views. The bailiff and the Potters' attorney recalled that the bailiff had based the longer sentence statement on his knowledge of the judge's sentencing practices, and not on any direct representation from the judge.

choice." The court questioned him on his response.[2] Before pronouncing sentence, the court asked Kenneth Potter if he had anything to say, and his response was, "Your honor, I don't feel anything I have to say would be important." The court asked, "You don't feel it would be important?", and when relator answered, "No," the court responded, "All right."[3]

---

[2]The pertinent portion of the dialogue from the guilty plea transcript is:

"BY THE COURT: You do this freely and voluntarily, and on your own free will?

"BY KENNETH RAY POTTER: I have no choice.

"BY THE COURT: I didn't ask you that, Mr. Potter.

"BY KENNETH RAY POTTER: Yes, sir. Yes.

. . . .

"BY THE COURT: What do you mean, you have no choice?

"BY KENNETH RAY POTTER: Just forget I mentioned it.

"BY THE COURT: Well, no. I have to know that now, you see, because this could come up later. What do you mean by you have no choice?

"BY KENNETH RAY POTTER: Will you please read the question again.

"BY THE COURT: I asked you has any force, threats, pressure or coercion been brought against you compelling you to change your plea from not guilty to guilty, and that you do this freely and voluntarily and on your own free will?

"BY KENNETH RAY POTTER: Yes, sir. There has been no force. No.

"BY THE COURT: And you do this freely and voluntarily?

"BY KENNETH RAY POTTER: Yes, sir.

"BY THE COURT: Now what do you mean by that, you had no choice?

"BY KENNETH RAY POTTER: I don't know. I don't even know why I said it.

"BY THE COURT: Well, the Court would like to know, if you have anything to say, Mr. Potter.

"BY KENNETH RAY POTTER: I'm so upset at the present moment I can't think straight.

"BY THE COURT: Well, now, I want you to be thinking straight, Mr. Potter, because we don't want you to say that you didn't understand what's going on in these proceedings. You understand?

"BY KENNETH RAY POTTER: Yes, sir.

"BY THE COURT: You understand what's going on?

"BY KENNETH RAY POTTER: Yes, sir."

[3]The guilty plea transcript reveals a further dialogue on this point:

In *State v. Sims*, ____ W. Va. ____, 248 S.E.2d 834, 838 (1978), we held that where a guilty plea has been entered upon the advice of counsel, and the voluntariness of the plea is challenged "on the grounds that fall within those on which counsel might reasonably be expected to advise," the validity of the plea is tested by "the competency of the advice given by counsel." [____ W. Va. at ____, 248 S.E.2d at 838]

We noted in *Sims*, however, that "[a] claim of incompetency of counsel is not the only basis on which a guilty plea can be undermined," but that it is "a part of the more general rule that requires a guilty plea to be made voluntarily, upon proper advice and with a full understanding of the consequences." [____ W. Va. at ____, 248 S.E.2d at 838 n. 2]. Observing that guilty pleas have been overturned on grounds "in which counsel may not be directly implicated," we cited, as examples, a broken plea bargain, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 52 L. Ed. 2d 136, 97 S.Ct. 1621 (1977), and *Brooks v. Narick*,

---

"BY KENNETH RAY POTTER: Your Honor, if I may?

"BY THE COURT: Sir?

"BY KENNETH RAY POTTER: If I may say something?

"BY THE COURT: Say it, Mr. Potter.

"BY KENNETH RAY POTTER: Maybe it's not important to you but it's the most important thing to me. (He hesitated and stated, 'I can't' and then continued.) I do have a wife and three kids. (Another hesitation.) Forget it.

"BY THE COURT: Well, now, Mr. Potter, the Court is willing to listen.

"BY KENNETH RAY POTTER: I beg to you for mercy. That's all.

"BY THE COURT: Do you have anything else to say?

"BY KENNETH RAY POTTER: (Crying as he answered.) And that I really hate it.

"BY THE COURT: Do you have anything else now?

"BY KENNETH RAY POTTER: (Still crying.) No.

. . . .

"BY KENNETH RAY POTTER: Your Honor, the amount of money that was taken, I am now in business and I make this much money in one day, and I am more than willing to pay any amount of money back.

(Kenneth Ray Potter was still crying and visibly upset while he was talking.)"

___ W. Va. ___, 243 S.E.2d 841 (1978); a record inadequately demonstrating the voluntariness of the plea, *e.g., Henderson v. Morgan,* 426 U.S. 637, 49 L. Ed. 2d 108, 96 S.Ct. 2253 (1976), and *Riley v. Ziegler,* ___ W. Va. ___, 241 S.E.2d 813 (1978); coercion of the plea, *e.g., Fontaine v. United States,* 411 U.S. 213, 36 L. Ed. 2d 169, 93 S.Ct. 1461 (1973); and inducement of the plea by trickery, *e.g., Smith v. O'Grady,* 312 U.S. 329, 85 L. Ed. 859, 61 S.Ct. 572 (1941), and *Nicely v. Butcher,* 81 W. Va. 247, 94 S.E. 147 (1917). [___ W. Va. at ___, 248 S.E.2d at 838 n. 2]

All of these grounds involve external events and pressures which some commentators have described as "extrinsic" factors.[4] The inquiry in cases presenting claims of extrinsic factors influencing the guilty plea is thus not directed at the adequacy of counsel's representation, but focuses on the impact of the extrinsic event or pressure on the voluntariness of the guilty plea.

The present case involves two principal extraneous factors: the all-or-nothing terms of the plea bargain agreement under which Kenneth Potter's guilty plea would not be accepted without that of his brother; and the information conveyed to relator by the bailiff to the effect that the judge would impose a substantially longer sentence if they insisted upon a trial.

In *State ex rel. Burton v. Whyte,* ___ W. Va. ___, ___ S.E.2d ___ (June 26, 1979) (No. 14418), we emphasized that a guity plea based on the competent advice of counsel "represents a serious admission of factual guilty, and where an adequate record is made to show it was voluntarily and intelligently entered, it will not be set aside." [Syllabus Point 3 in part, ___ W. Va. at ___, ___ S.E.2d at ___]. In *Burton,* we were not concerned with a question of extrinsic pressure to induce the

---

[4]*Waltz, Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases,* 59 NW. L. Rev. 289, 326–41 (1964); *see* Strazzella, *Ineffective Assistance of Counsel Claims: New Uses, New Problems,* 19 Ariz. L. Rev. 443, 456–59 (1977).

guilty plea, but with the legal issue of the voluntariness of the defendant's confession.

In Syllabus Point 4 of *State ex rel. Clancy v. Coiner,* 154 W. Va. 857, 179 S.E.2d 726 (1971), we said:

> "The fact that a defendant, in open court, at the time of the entry of a plea, stated that it was not coerced or unduly influenced by promises, although evidential on the issue, does not foreclose inquiry as to its voluntariness."

There can be little question that the record of the guilty plea must affirmatively demonstrate that the guilty plea was voluntarily and intelligently entered. *E.g., Blackledge v. Allison, supra; Fontaine v. United States, supra; Machibroda v. United States,* 368 U.S. 487, 7 L. Ed. 2d 473, 82 S.Ct. 510 (1962); *Griffith v. Wyrick,* 527 F.2d 109 (8th Cir. 1975); *Walters v. Harris,* 460 F.2d 988 (4th Cir. 1972), *cert. denied sub. nom. Wren v. United States,* 409 U.S. 1129, 35 L. Ed. 2d 262, 93 S.Ct. 947; *Riley v. Ziegler, supra; Thomas v.* Mohn, ____ W. Va. ____, 239 S.E.2d 500 (1977); *Call v. McKenzie,* ____ W. Va. ____, 220 S.E.2d 665 (1975).

In *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S.Ct. 1463 (1970), the court specifically spoke to extrinsic factors of coercion, placed on the defendant by agents of the state, as invalidating the guilty plea:

> "Of course, the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant. . . ." [397 U.S. at 750, 25 L. Ed. 2d at 757, 90 S.Ct. at 1470]

In Note 8, *Brady* also touched on the fact that the state's charging or sentencing power might influence the voluntariness of the guilty plea:

> "We here make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty. In Brady's case there is no claim

that the prosecutor threatened prosecution on a charge not justified by the evidence or that the trial judge threatened Brady with a harsher sentence if convicted after trial in order to induce him to plead guilty." [397 U.S. at 751, 25 L. Ed. 2d at 758, 90 S.Ct. at 1470][5]

In the present case, the guilty plea record suggests that the relator did not freely and voluntarily enter his guilty plea. His "no choice" comment and his apparent emotional distress, when coupled with the habeas corpus record developing the circumstances surrounding the genesis of the guilty plea, create a serious doubt as to the voluntariness of the plea.

The unitary nature of the plea bargain proposal extended to the co-defendants required Kenneth Potter to weigh not only his own fate—specifically, his chances of acquittal if he chose to go to trial—but also that of his brother.[6] While we do not suggest that the bailiff was an emissary of the judge, he was nonetheless an agent of the State whose remarks, to the effect that a substantially heavier sentence would be imposed upon conviction after a jury trial, added a further coercive influence.

Interwoven with these direct pressures was the sudden reversal of events, from a posture of litigating the issue of guilt to deciding during a recess while the jury waited whether to plead guilty. The record contains no suggestion that the petitioner had been required to give

---

[5]We do not read *Bordenkircher v. Hayes*, 434 U.S. 357, 54 L. Ed. 2d 604, 98 S.Ct. 663 (1978), as altering *Brady*, but only as recognizing that a prosecutor can utilize the threat of a recidivist charge in his plea bargain negotiations with the defendant.

[6]At least one court has stated that a plea bargain which involves concessions to another, "—especially a sibling or a loved one—bears particular scrutiny. . . ." *State ex rel. White v. Gray*, 57 Wis.2d 17, 29, 203 N.W.2d 638, 644 (1973). The court in *White* remanded the case on a conflict of interest holding, since the same attorney represented both defendants. This issue was not raised in the present case. *See Holloway v. Arkansas*, 435 U.S. 475, 55 L. Ed. 2d 426, 98 S.Ct. 1173 (1978).

any consideration to a guilty plea at any time prior to the time the recess was granted.

We need not isolate and weigh separately the several factors that render the guilty plea involuntary. The law requires that the voluntariness of a guilty plea must be tested by the totality of the circumstances surrounding its entry. *Brady v. United States, supra,* 397 U.S. at 749, 25 L. Ed. 2d at 757, 90 S.Ct. at 1469; *Griffith v. Wyrick,* 527 F.2d 109 (8th Cir. 1975).

We conclude, under all the circumstances, that the guilty plea was not entered freely and voluntarily, and therefore must be set aside.

In awarding the writ of habeas corpus to vacate the guilty plea, we do not foreclose the State from proceeding again on the original criminal charge. *Cf. Rhodes v. Leverette,* _____ W. Va. _____, 239 S.E.2d 136 (1977).

*Writ awarded.*