STATE OF WEST VIRGINIA

*v.*

MARK PETTIGREW

(No. 14945)

Decided November 17, 1981.

*David R. Janes* for appellant.

*Chauncey H. Browning,* Attorney General, *and George W. Stokes,* Assistant Attorney General, for appellee.

NEELY, JUSTICE:

The appellant, Mark Pettigrew, appeals from an order of the Circuit Court of Marion County refusing to grant him a writ of error and supersedeas from a final judgment entered by the criminal court of Marion County. His assignment of error in the circuit court was that the criminal court improperly refused to allow him to withdraw a guilty plea.

The appellant was indicted for contributing to the delinquency of a minor. On 10 July 1973, before the passage of the Judicial Reorganization Amendment, the then existing criminal court accepted the appellant's guilty plea. Before accepting the plea, the court conducted a thorough and rigorous interrogation of the appellant to assure that the plea was voluntarily and intelligently made. The appellant had agreed to enter his guilty plea with the understanding that the prosecution would not object to the matter being referred to the Division of Corrections for a probation report. The appellant also agreed to appear as a witness for the State at the trial of his codefendant.

After reviewing the probation report and determining that the appellant had cooperated with the State as promised in the plea bargain agreement, the court sentenced the appellant to one year in jail and ordered him to undergo the psychiatric examinations necessary to be eligible for a work-release program. The appellant imme-

diately moved to withdraw his guilty plea. After a full hearing, the criminal court denied the appellant's motion on 25 October 1973. The appellant then filed a petition for writ of error and supersedeas in the Circuit Court of Marion County. The record from the criminal court was not transcribed, certified and filed with the circuit court until 9 August 1979. On 24 August 1979 the circuit court refused to grant the appeal. the appellant is still free on $20,000 bail pending appeal.

The appellant has assigned two errors: first, the appellant asserts that he had a right to withdraw his guilty plea because he was led to believe that probation was guaranteed; second, the delay in producing a transcript for review by the circuit court constituted a denial of due process. We find neither assignment meritorious and affirm.

I

Appellant does not contend that he was inadequately informed of his rights by the trial court. Indeed, the trial court complied before the fact with our recent holdings in his lengthy and complete dialogue with the appellant while ascertaining the intelligent and voluntary nature of the plea. *See Potter v. Mohn*, 163 W.Va. 474, 256 S.E.2d 763 (1979); *Riley v. Ziegler*, 161 W.Va. 290, 241 S.E.2d 813 (1978); *Thomas v. Leverette*, 161 W.Va. 224, 239 S.E.2d 500 (1977); *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975).

The appellant argues, however, that he should be allowed to withdraw his guilty plea because he subjectively thought that probation was guaranteed. To substantiate this argument the appellant relies on *State ex rel. Clancey v. Coiner*, 154 W.Va. 857, 179 S.E.2d 726 (1971). Such reliance is ill-placed because in *Clancey*, the prosecuting attorney did not keep up his end of the bargain. In the case before us there is no question that the terms of the plea bargain were met by both sides. Nonetheless, the appellant contends that his mistaken subjective belief that he was guaranteed probation warrants his being able to withdraw his plea.

This Court has not previously addressed this precise question. We are instructed, however, by *State v. Olish*, ____ W.Va. ____, 266 S.E.2d 134, 136 (1980), in which we noted that a post-sentencing withdrawal of a guilty plea should be permitted "only to avoid manifest injustice." Justice Miller pointed out the reasons why we apply this higher standard of review to post-sentencing withdrawals of guilty pleas than we do to presentencing withdrawals. He wrote as follows:

> The basis for the distinction between these two rules is threefold. First, once sentence is imposed, the defendant is more likely to view the plea bargain as a tactical mistake and therefore wish to have it set aside. Second, at the time the sentence is imposed, other portions of the plea bargain agreement will often be performed by the prosecutor, such as the dismissal of additional charges or the return or the destruction of physical evidence, all of which may be difficult to undo if the defendant later attacks his guilty plea. Finally, a higher post sentence standard for withdrawal is required by the settled policy of giving finality to criminal sentences which result from a voluntary and properly counseled guilty plea. *Id.*

With this higher standard of review in mind, we turn now to other jurisdictions which have considered the question before us. In *United States v. Maggio*, 514 F.2d 80 (5th Cir. 1975), the defendant believed that by pleading he would be sentenced to only four months incarceration, even though there had been no promises made to that effect. When the court sentenced him to two years in prison, he tried to withdraw his plea. The court concluded that "the subjective belief of a defendant as to the amount of sentence that will be imposed, the hope for leniency, unsupported by any promises from the government or indications from the court, is insufficient to invalidate a guilty plea as unknowing or involuntary." *Id.* at 88. Addressing the same issue, the Fourth Circuit stated that a "disappointed hope of expectation of leniency—so long as it is not wrongfully induced by the government—does not justify withdrawal of a guilty plea nor afford occassion for

invalidating it." *Vanater v. Boles*, 377 F. 2d 898, 900 (4th Cir. 1967).

In the case before us there is no evidence to support a reasonable objective belief that probation was guaranteed. At most appellant was justified in hoping for probation and in believing that probation was likely. However, we cannot say that he was justified in believing that by entering a guilty plea he was assured of getting probation. As stated by the Eighth Circuit in *United States v. Degand*, 614 F.2d 176, 178 (8th Cir. 1980), " 'Hope' of a different result can hardly be said to deprive a guilty plea of its voluntary character." Hence, we conclude that the trial court did not err in determining that the appellant's guilty plea was voluntary. Moreover, we do not find that the appellant has met the test set out in *Olish* that, where a guilty plea is sought to be withdrawn by a defendant after he has been sentenced, it should be granted to avoid manifest injustice only. 266 S.E.2d at 136.

## II

The appellant also argues that the delay of the court reporter in preparing the transcript deprived the appellant of due process of law. The standard which this Court has adopted to determine if a defendant has been denied due process with respect to his rights of appeal is whether there has been "extraordinary dereliction" on the part of the State as determined on a case by case basis. *Rhodes v. Leverette*, 160 W.Va. 781, 239 S.E.2d 136 (1977). We elaborated the test for "extraordinary dereliction" in syl. pt. 6 of *Rhodes*:

> Factors to be considered in determining whether there has been extraordinary dereliction are: the clarity and diligence with which the relator has moved to assert his right of appeal; the length of time that has been served on the underlying sentence measured against the time remaining to be served; whether prior writs have been filed or granted involving the right of appeal; and the related question of whether resentencing has occurred in order to extend the appeal period. While extraordinary dereliction on the part of the State

does not require a showing of malice or ill will, certainly if such is shown it would be a significant factor.

Applying the above factors to the case before us, we are easily able to conclude that the State has not been so extraordinary derelict as to justify the setting aside of the appellant's guilty plea. First, we note that the appellant was represented by private counsel from the beginning of the case until 1980 when he filed a pauper's affidavit. During that time appellant made no effort to obtain a transcript or to perfect his appeal. The language of *W. Va. Code,* 58-4-6 [1931], prescribing the means for appealing the ruling of a court of limited jurisdiction to a circuit court, implies that the petitioner and the State share the burden of going forward with the appeals process. The petitioner must first file his petition in the court of limited jurisdiction; and then, before the record is forwarded to the circuit court, the petitioner must pay all expenses and fees incurred in the production of the record. While the appellant's lack of diligence does not constitute a waiver of his rights, his total inactivity makes dereliction on the part of the State less egregious by comparison.

As to the other factors set out in *Rhodes,* we note that: the defendant has served no part of his sentence; there have been no prior writs or legal proceedings concerning his right of appeal; and resentencing in order to extend the appeal period is unnecessary since this Court has already heard the appeal. These circumstances contrast sharply with those found in *Johnson v. McKenzie,* 160 W.Va. 385, 235 S.E.2d 138 (1977) in which we granted an unconditional discharge of the petitioner from prison. In *Johnson,* the petitioner had already served just three months short of his minimum sentence. He had also previously sought and received habeas corpus relief in the form of a remand for resentencing to afford him a second opportunity to appeal. This Court concluded that on such facts the State's failure to assist in the appeals process constituted extraordinary dereliction. *Id.* at 139.

In light of the above and in the absence of any evidence of malice or ill will on the part of the State resulting in the

delay in producing the transcript, we cannot say that the appellant has been deprived of any due process rights. As the Minnesota Supreme Court reasoned in *State ex rel. Mastrian v. Tahash*, 277 Minn. 309, 312-13, 152 N.W.2d 786, 789 (1967), in which there had been a three year delay in furnishing a transcript:

> Although, as we have said, the delay encountered by relator was unfortunate, we cannot say that it was unreasonable or oppressive in a constitutional sense. Whether or not his rights were grounded on either the Sixth or Fourteenth Amendment, those rights are necessarily relative and are consistent with delays that are neither purposeful nor oppressive. Moreover, even if we were to say that relator's constitutional rights were infringed by this delay, the remedy is in correction of the error and not in the reversal of his conviction or his discharge from confinement. What relator rightly seeks is adequate and effective appellate review upon the merits of his original conviction, and that he will now have. (Citations omitted).

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Marion County is affirmed.

*Affirmed.*